PEOPLE v MUNGO (ON REMAND)

Docket No. 269250. Submitted July 15, 2009, at Lansing. Decided April
        13, 2010, at 9:10 a.m.

    Michael W. Mungo was charged in the Washtenaw Circuit Court with
        unlawfully carrying a concealed weapon. A police officer found the
        weapon under the driver's seat of defendant's automobile during a
        search conducted after the officer made a routine traffic stop and
        arrested defendant's passenger on outstanding warrants for traffic
        violations. The court, David S. Swartz, J., granted defendant's
        motion to suppress evidence of the gun and quash the information.
        The Court of Appeals, WHITBECK, C.J., and TALBOT and ZAHRA, JJ.,
        reversed and remanded, holding that a police officer may search an
        automobile incident to a passenger's arrest when before the search
        there was no probable cause to believe that the automobile
        contained contraband or that the driver and owner of the automo-
        bile had engaged in unlawful activity and that the search was
        therefore constitutionally permissible. 277 Mich App 577 (2008).
        Defendant sought leave to appeal. The Michigan Supreme Court
        initially held the application in abeyance and, following the release
        of the United States Supreme Court's decision in *Arizona v Gant*,
        556 US ___; 129 S Ct 1710 (2009), remanded the case to the Court
        of Appeals for reconsideration in light of *Gant*. 483 Mich 1091
        (2009).

    On remand, the Court of Appeals *held*:

    1. The search of defendant's vehicle incident to the arrest of
his passenger was unreasonable and violated the Fourth Amend-
ment. In *Gant*, the United States Supreme Court held that a
search incident to an arrest may include only the person of the
arrestee and the area within his or her immediate control, that is,
the area from which he or she might gain a weapon or evidence
that could be destroyed. A police officer may search a vehicle
incident to a recent occupant's arrest only when the arrestee is
unsecured and is within reaching distance of the passenger com-
partment at the time of the search or when it is reasonable to
believe that evidence relevant to the crime of arrest might be
found in the vehicle. In this case, defendant was not under arrest
at the time of the search, which was incident to the passenger's

arrest. Both defendant and the passenger had been secured in the backseat of a police vehicle, and neither defendant nor the passenger would have been able to reach into the passenger compartment of defendant's automobile during the search, so officer safety was not a concern. The passenger was arrested for traffic violations, so there would have been no reasonable basis for the police officer to conclude that evidence of those offenses could be found during the search. The trial court correctly granted defendant's motion to suppress the evidence and quash the information.

2. The retroactivity doctrine provides that a new rule for the conduct of criminal prosecutions must be applied retroactively to all state or federal cases pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break from prior law. The rule of *Gant* applies to this case.

3. The exclusionary rule precludes the use at trial of evidence obtained in violation of the Fourth Amendment. Its purpose is to deter police misconduct. The good-faith exception to the exclusionary rule applies in situations such as one in which a police officer acts in good faith and in an objectively reasonable manner on a search warrant later found defective because of a judicial error. Excluding evidence obtained in such a search would not deter police misconduct. The exclusionary rule should be applied on a case-by-case basis, and only if application of the rule would deter police misconduct.

4. The retroactivity doctrine does not preclude application of the good-faith exception. Even assuming that reliance on Michigan caselaw could form a basis to invoke the good-faith exception, however, the prior opinion in this case was the first published Michigan case to extend the decision in *New York v Belton*, 453 US 454 (1981), which applied the search-incident exception in the context of a vehicle search, to a search incident solely to a passenger's arrest. The law on this point was thus not established and clear, and the search in this case could not have been premised on a good-faith reliance on caselaw.

Affirmed.

1. SEARCHES AND SEIZURES — ARRESTS — SEARCHES INCIDENT TO AN ARREST — AUTOMOBILE SEARCHES.

A search incident to an arrest may include only the person of the arrestee and the area within his or her immediate control, that is, the area from which he or she might gain a weapon or evidence that could be destroyed; a law enforcement officer may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and is within reaching distance of the

passenger compartment at the time of the search or when it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle (US Const, Am XIV).

2. CRIMINAL LAW — RETROACTIVITY OF DECISIONS.

A new rule for the conduct of criminal prosecutions must be applied retroactively to all cases pending on direct review or not yet final, even if the new rule constitutes a clear break from prior law.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Assistant Prosecuting Attorney, for the people.

*Ferris & Salter, P.C.* (by *Don Ferris*), and *The Mungo Law Firm, PLC* (by *Leonard Mungo*), for defendant.

ON REMAND

Before: WHITBECK, P.J., and TALBOT and ZAHRA, JJ.

ZAHRA, J. The prosecution appeals as of right the circuit court's order granting defendant's motion to suppress evidence and quash the information. Previously, this Court reversed the circuit court's order, holding that "a police officer may search a car incident to a passenger's arrest where before the search there was no probable cause to believe that the car contained contraband or that the driver and owner of the car had engaged in any unlawful activity." *People v Mungo*, 277 Mich App 577, 578; 747 NW2d 875 (2008). Following this Court's decision, defendant appealed in our Supreme Court, which held the application for leave to appeal in abeyance pending release of the United States Supreme Court's decision in *Arizona v Gant*, 556 US ___; 129 S Ct 1710; 173 L Ed 2d 485 (2009). On April 21, 2009, the United States Supreme Court issued an opinion in *Gant*, holding that a vehicle may *not* be

searched "incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Id.* at ___; 129 S Ct at 1714. Consequently, our Supreme Court has vacated this Court's decision in *Mungo* and remanded for reconsideration in light of *Gant. People v Mungo*, 483 Mich 1091 (2009). On remand, we affirm the circuit court's order suppressing evidence and quashing the information.

I. BASIC FACTS AND PROCEDURE

As stated in this Court's previous opinion:

Washtenaw County Sheriff's Deputy Ryan Stuck lawfully initiated a traffic stop of a car driven by defendant. Mark Dixon was the sole passenger in the car. Upon request, defendant produced the vehicle registration and proof of insurance. Deputy Stuck also requested the occupants' driver's licenses and ran Law Enforcement Information Network (LEIN) checks on both Dixon and defendant. Deputy Stuck found that Dixon had two outstanding warrants issued for failing to appear in court to answer traffic-violation charges. Deputy Stuck arrested Dixon, asked his dispatcher to send another officer to assist him, and secured Dixon in the backseat of his squad car. Deputy Stuck directed defendant to step out of his car and conducted a pat-down search. Thereafter, Deputy Stuck searched defendant's car and found an unloaded gun in a case underneath the driver's seat and ammunition in the glove compartment. Deputy Stuck asked defendant to produce a permit to carry a concealed weapon. However, defendant produced only a permit to purchase a firearm. Defendant's LEIN check did not reveal that he had been issued a concealed-weapons permit. Deputy Stuck arrested defendant for unlawfully carrying a concealed weapon.

In the circuit court, defendant moved to quash the information and suppress evidence of the gun. The prosecutor relied on *New York v Belton*, 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), to argue that the arrest of any person in a car justifies a search of the passenger compart-

ment of that car. The prosecutor argued that the search that led to the discovery of the gun was constitutionally permissible because Dixon, a passenger in defendant's car, was lawfully arrested. Defendant relied on *State v Bradshaw*, 99 SW3d 73 (Mo App, 2003), a case in which a divided panel of the Missouri Court of Appeals distinguished *Belton* and held that police officers cannot lawfully search a driver's vehicle following the arrest of a passenger where the passenger was safely arrested and there was no reasonable suspicion that the driver possessed unlawful items.

The circuit court distinguished *Belton* and followed *Bradshaw*. The circuit court concluded that defendant was not under arrest at the time Deputy Stuck searched his car. The circuit court further concluded that defendant had a protected privacy interest in his car. The circuit court held that there was no probable cause to arrest defendant and, therefore, the search of his car was not constitutionally permissible. This appeal followed. [*Mungo*, 277 Mich App at 578-580.]

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to dismiss a charge on legal grounds. *People v Owen*, 251 Mich App 76, 78; 649 NW2d 777 (2002). This Court reviews a trial court's findings of fact for clear error. MCR 2.613(C).

### B. APPLICATION OF *GANT v ARIZONA*

In *Gant*, 556 US at ___; 129 S Ct at 1714-1715, two persons were arrested outside a residence at which narcotics allegedly were sold. These persons were secured in separate police cars. Defendant Gant, who had been at the residence earlier, arrived in his vehicle and was arrested for driving with a suspended license after

he had left the vehicle and walked some 10 to 12 feet. An additional patrol car arrived, and Gant was locked in the backseat of that car. Two officers searched Gant's car and found a gun and a bag of cocaine. Ultimately, the Arizona Supreme Court held that the search of Gant's car was unreasonable under the Fourth Amendment of the United States Constitution. *Id.* at ___; 129 S Ct at 1715.

The United Stated Supreme Court revisited in *Gant* the issue of what circumstances permit a police officer to search the passenger compartment of a vehicle incident to a recent occupant's arrest. *Id.* at ___; 129 S Ct at 1716. The *Gant* Court began its analysis by noting that, generally, warrantless searches are unreasonable per se under the Fourth Amendment. One exception to this general rule is that a search may be permissible if it is incident to a lawful arrest. That exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* A search incident to an arrest may include only the person of the arrestee and the area within the immediate control of the arrestee, i.e., the area from which the arrestee might gain a weapon or evidence that could be destroyed. *Id.*, citing *Chimel v California*, 395 US 752, 763; 89 S Ct 2034; 23 L Ed 2d 685 (1969). The *Gant* Court explained that in *New York v Belton*, 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), the Supreme Court considered the application of the *Chimel* rule in the context of a vehicle search. It held that "when an officer lawfully arrests 'the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile' and any containers therein." *Gant*, 556 US at ___; 129 S Ct at 1717, quoting *Belton*, 453 US at 460.

The Supreme Court observed that the decision in *Belton* "has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant,* 556 US at ___; 129 S Ct at 1718. The Court continued:

> Under this broad reading of *Belton,* a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 453 U. S. at 460, n 3. Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.
>
> Although it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton* [*v United States,* 541 US 615, 632; 124 S Ct 2127; 158 L Ed 2d 905 (2004)] (Scalia, J., concurring in judgment). In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, *e.g., Atwater* v. *Lago Vista,* 532 U. S. 318, 324 [121 S Ct 1536; 149 L Ed 2d 549] (2001); *Knowles* v. *Iowa,* 525 U. S. 113, 118 [119 S Ct 484; 142 L Ed 2d 492] (1998). But in others, including *Belton* and *Thornton,* the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein. [*Gant,* 556 US at ___; 129 S Ct at 1719.]

The Supreme Court concluded that "[n]either the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case." *Id.* The Court noted that unlike in *Belton,* in which a single police officer had to deal with four unsecured arrestees, in *Gant,* five officers were present to deal with three arrestees, all of whom were secured in police vehicles before the search of Gant's car occurred. Thus, Gant could not have reached into the passenger compartment of his vehicle at the time the vehicle was searched. Furthermore, unlike in *Thornton,* in which the defendant was arrested for a narcotics offense, Gant was arrested for driving with a suspended license. The police could not have expected to find evidence of that offense from a search of Gant's car. The *Gant* Court determined that "[b]ecause police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable." *Id.*

The Supreme Court concluded:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. The Arizona Supreme Court correctly held that this case involved an unreasonable search. Accordingly, the judgment of the State Supreme Court is affirmed. [*Id.* at ___; 129 S Ct at 1723-1724.]

Applying *Gant* to the facts presented in this case, we conclude that the search of defendant's vehicle incident

to the arrest of Dixon was illegal and that the circuit court correctly granted defendant's motion to suppress the evidence and quash the information.

Deputy Stuck placed Dixon under arrest after discovering that Dixon had two outstanding warrants for traffic violations. The officer secured Dixon in the backseat of the police vehicle. The officer searched the vehicle only after an additional police unit had arrived and defendant had been secured in the backseat of that police vehicle. Defendant was not under arrest at the time the search occurred, and Deputy Stuck searched defendant's vehicle incident to Dixon's arrest. Neither defendant nor Dixon would have been able to reach into the passenger compartment of defendant's vehicle when the search occurred; thus, concern for officer safety was not at issue. See *Gant*, 556 US at ___; 129 S Ct at 1716. Further, because Dixon was placed under arrest for traffic violations, there would have been no reasonable basis for the officer to conclude that evidence of those offenses could be found in a search of defendant's vehicle. See *id.* at ___; 129 S Ct at 1719; *Thornton*, 541 US at 632 (Scalia, J., concurring in the judgment). Thus, we conclude that Deputy Stuck's warrantless search of defendant's car was unreasonable and in violation of the Fourth Amendment. See *Gant*, 556 US at ___; 129 S Ct at 1723-1724.

## C. THE EXCLUSIONARY RULE AND THE RETROACTIVITY DOCTRINE

This Court sua sponte issued an order directing the parties to file supplemental briefs addressing application of the good-faith exception to the exclusionary rule, see *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004), and the retroactivity doctrine, see *Griffith v Kentucky*, 479 US 314, 328; 107 S Ct 708; 93 L Ed 2d 649 (1987); *People v Bell (On Second*

*Remand)*, 264 Mich App 58; 689 NW2d 732 (2004). Defendant ignored this Court's directive. The prosecution filed a brief acknowledging that *Gant* must be applied retroactively in the instant case. Nonetheless, the prosecution advocated for reversal of the circuit court's order of suppression under the good-faith exception to the exclusionary rule. We conclude that the search at issue in this case does not fall within the good-faith exception to the exclusionary rule. Defendant is entitled to have the rule of law established in *Gant* applied to this case.

The judicially created exclusionary rule operates to preclude from use at trial evidence obtained in violation of the Fourth Amendment. *Leon*, 468 US at 906. The purpose of the exclusionary rule is to deter police misconduct. *Id*. In *Leon*, the United States Supreme Court established a good-faith exception to the exclusionary rule, noting that application of the exclusionary rule requires weighing the benefits of the resulting deterrence of police misconduct against the costs incurred by preventing the introduction of otherwise valid evidence. *Id*. at 906-907. The *Leon* Court concluded that circumstances could exist in which these costs could outweigh any slight benefits gained by application of the exclusionary rule. For example, if a law enforcement officer acted in good faith and in an objectively reasonable manner on a search warrant later found to be defective because of a judicial error, excluding the evidence obtained in the search would not operate to deter police misconduct. *Id*. at 920-921. The *Leon* Court concluded that the exclusionary rule should be applied on a case-by-case basis, and only if application would deter police misconduct. *Id*. at 918.[1]

---

[1] In *Goldston*, our Supreme Court adopted the good-faith exception to the exclusionary rule in Michigan. *Goldston*, 470 Mich at 526, 543; Const

The retroactivity doctrine provides that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith*, 479 US at 328. The interaction between the good-faith exception to the exclusionary rule and the retroactivity doctrine has been addressed by a number of federal courts. Divergent opinions have emerged in the federal courts in regard to the interaction and application of these two legal concepts.

In *United States v Buford*, 623 F Supp 2d 923 (MD Tenn, 2009), a case decided after the United States Supreme Court's decision in *Gant*, the United States District Court for the Middle District of Tennessee addressed application of the good-faith exception to the exclusionary rule in a case factually similar to the instant case. The *Buford* court concluded that while there is tension between the policies supporting the exclusionary rule and the retroactivity doctrine, the retroactivity doctrine required rejection of the good-faith exception to the exclusionary rule in that case:

> [A]n extension of the "good faith" exception would lead to perverse results. For instance, under the [prosecution's] argument, there is no basis for distinguishing the petitioner in the "new rule" case from similarly situated defendants whose cases were proceeding when the new rule was announced. That is, from the [prosecution's] view of the "good faith" exception, there is no distinction between Gant and the defendant here, because both arresting officers were operating in a *Belton* world. Under the

---

1963, art 1, § 11. The *Goldston* Court held that the exclusionary rule should be applied on a case-by-case basis, and only in circumstances in which exclusion of evidence would serve to deter police misconduct that occurs during search or seizure or in the preparation of an affidavit. *Goldston*, 470 Mich at 538, 540-543.

[prosecution's] argument, then, Gant himself would only be entitled to the rather hollow relief of knowing that the search he was subjected to was a violation of his constitutional rights; that is, he would not be entitled to suppression of the evidence because the evidence was obtained in a good faith reliance on *Belton*. Anyone similarly situated to Gant (such as the defendant) who was unfortunate enough to be arrested pre-*Gant* would likewise receive the same hollow relief. Anyone similarly situated to Gant, however, who was arrested subsequent to the *Gant* decision would be entitled to suppression of the evidence because the *Gant* decision would eliminate the good faith requirement. Therefore, the individual (Gant) who successfully convinced the Court that his Fourth Amendment rights had been violated would run the risk of criminal penalty, while subsequent defendants might go free, despite being subject to identical intrusions on privacy. Indeed, discussing a defendant similarly situated to the one in this case, one court noted, "[t]o say that an exception exists under the *Leon* rule to the application of [a] United States Supreme Court[] holding . . . which would permit the principle of the [] holding to be ignored [in a case subsequent to the holding] . . . to Defendant's prejudice, creates logical and rationalogical anomalies in implementation of Fourth Amendment doctrine of a decidedly perverse effect." *U.S. v. Holmes*, 175 F.Supp.2d 62 n. 6 (D.Me.2001) (noting the conundrum but not resolving the issue). [*Buford*, 623 F Supp 2d at 926-927.]

The *Buford* court rejected the prosecution's contention that its interpretation of the law eliminated the good-faith doctrine, noting that the cases that articulated the doctrine had not "gone so far as to extend the doctrine to reliance on decisions of the United States Supreme Court that were reversed or overturned while the defendant's case was on review." *Id*. at 927. The *Buford* court suppressed the evidence obtained in the search of the defendant's vehicle. *Id*.

A contrary result was reached by the United States District Court for the Eastern District of Washington. In *United States v Grote*, 629 F Supp 2d 1201, 1206-1207 (ED Wash, 2009) (*Grote I*), the district court ruled that even if the search incident to the defendant's arrest were not valid under *Gant*, the good-faith exception would apply and the evidence should not be excluded. In its subsequent order denying reconsideration, the court rejected the defendant's assertion that application of the good-faith exception violated the retroactivity doctrine set out in *Griffith* and relied on in *Buford*. In the order denying reconsideration, the court stated:

> This court understands the importance of the retroactivity doctrine in insuring that similarly situated criminal defendants are treated the same. In this court's view, however, the good faith exception to the exclusionary rule is of equal importance. The exclusionary rule is intended to deter future police misconduct, not to cure past violations of a defendant's rights. Future police misconduct is not deterred when, as here, the officer did not engage in any misconduct and did not make a mistake of fact or law, but acted in objective good faith on the search incident to arrest law as it existed at the time, and had existed for many years. There is no deterrent effect to be gained by applying the exclusionary rule in this case. [*United States v Grote*, unpublished order of the United States District Court for the Eastern District of Washington, entered July 15, 2009 (Case No. CR-08-6057-LRS); 2009 WL 2068023, at *3; 2009 US Dist LEXIS 60893, at *9-10 (*Grote II*).]

Similarly in *United States v McCane*, 573 F3d 1037, 1039 (CA 10, 2009), the United States Court of Appeals for the Tenth Circuit concluded that, in light of *Gant*, the district court had erred by concluding that the search of the defendant's vehicle was valid, but affirmed the district court's denial of the defendant's motion to suppress on the basis of the good-faith exception to the

exclusionary rule. The *McCane* court noted that Tenth Circuit pre-*Gant* precedent supported the search of the defendant's vehicle. *Id.* at 1041-1042. The *McCane* court held that the district court properly denied the defendant's motion to suppress the evidence. *Id.* at 1039, 1045. In so doing, the court concluded that application of the retroactivity doctrine did not preclude application of the good-faith exception to the exclusionary rule:

> McCane argues the retroactivity rule announced in *Griffith v. Kentucky*, 479 U.S. 314, 322-23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), requires application of the Supreme Court's holding in *Gant* to this case. The issue before us, however, is not whether the Court's ruling in *Gant* applies to this case, it is instead a question of the proper remedy upon application of *Gant* to this case. In *Leon*, the Supreme Court considered the tension between the retroactive application of Fourth Amendment decisions to pending cases and the good-faith exception to the exclusionary rule, stating that retroactivity in this context "has been assessed largely in terms of the contribution retroactivity might make to the deterrence of police misconduct." 468 U.S. at 897, 912-13, 104 S. Ct. 3405. The lack of deterrence likely to result from excluding evidence from searches done in good-faith reliance upon settled circuit precedent indicates the good-faith exception should apply in this context. *See* [*Illinois v*] *Krull* [480 US 340, 360; 107 S Ct 1160; 94 L Ed 2d 364 (1987)] (declining to apply a court decision declaring a statute unconstitutional to a case pending at the time the decision was rendered and instead applying the good-faith exception to the exclusionary rule because the officer reasonably relied upon the statute in conducting the search). [*Id.* at 1044 n 5.]

Further, in *United States v Lopez*, 567 F3d 755, 757-758 (CA 6, 2009) (*Lopez I*), the United States Court of Appeals for the Sixth Circuit reversed the lower court's denial of the defendant's motion to suppress the evidence in light of *Gant* and remanded for further

proceedings, notwithstanding its conclusion that the search was permitted under the *Belton* standard. On remand, the prosecution asserted that "the exclusionary rule should not apply to the questioned evidence in this case because the search of [the defendant's] car was conducted 'in good faith reliance on *Belton* and its progeny.'" *United States v Lopez*, 655 F Supp 2d 720, 728 (ED Ky, 2009) (*Lopez II*). The United States District Court for the Eastern District of Kentucky noted that *Gant* did not address "the consequences of its holding regarding searches conducted incident to lawful arrests in reliance on *Belton* and subsequent decisions applying *Belton*." *Id*. at 725. The district court also noted that the Sixth Circuit court did not "reverse the judgment of conviction with instructions that the charges be dismissed. Instead, it stated that, '[t]he judgment of the district court is reversed *and remanded for further proceedings consistent with this opinion*." *Id*. at 727-728. The district court thus concluded that the Sixth Circuit court's "opinion did not restrict this Court from considering whether the good faith exception to the exclusionary rule applies to the facts presented.'" *Id*. at 732.

The district court then conducted a hearing regarding whether the police officer acted in good faith in conducting the search of the defendant's car. *United States v Lopez*, unpublished memorandum opinion of the United States District Court for the Eastern District of Kentucky, issued September 23, 2009 (Case No. 6:06-120-DCR); 2009 WL 3112127, at *2; 2009 US Dist LEXIS 87720, at *7 (*Lopez III*). The district court observed, "Like its sister circuits prior to *Gant*, the Sixth Circuit recognized as lawful under *Belton* searches of vehicles conducted incident to an arrest even in circumstances where the arrestee did not have access to the passenger compartment of his car." *Id*.,

citing *United States v White*, 871 F2d 41, 44 (CA 6, 1989), and *United States v Martin*, 289 F3d 392 (CA 6, 2002).[2]

The *Lopez III* court then concluded:

> Here, the arrest was proper and the officer conducted the search in accordance with existing case law from this circuit. There is absolutely no evidence (or even argument) that the officer conducting the search was reckless in any way. While police conducting searches incident to arrests will likely change following *Gant*, the officer conducting the search of Lopez's vehicle acted appropriately at that time. In short, a reasonably well-trained officer would not have known or concluded that the search was "illegal" in light of all the circumstances presented. [*Lopez III*, 2009 WL 3112127 at *4; 2009 US Dist LEXIS 87720 at *12.]

Preliminarily, we reject the notion expressed in *Buford* that the retroactivity doctrine precludes application of the good-faith exception to the exclusionary rule. As stated in *Grote II*, 2009 WL 2068023 at *3; 2009 US Dist LEXIS 60893 at *9, these two legal principles are of equal importance. Further, each principle presents constitutional concerns distinct from the other. As recently stated, "because there is a clear dichotomy between Fourth Amendment violation and remedy, the retroactive application of *Gant* here to conclude that there was a violation does not inevitably lead to the conclusion that the good-faith exception cannot be considered to determine the appropriate remedy." *People v Key*, ___ P3d ___ (Colo App, 2010).*

We conclude that the retroactivity doctrine requires that *Gant* be applied to the instant case. The search at issue in the present case violated the Fourth Amend-

---

[2] The district court also cited several cases not selected for publication.

\* Opinion withdrawn August 5, 2010, by *People v Key*, unpublished opinion of the Colorado Court of Appeals (Case No. 07CA1257)—Reporter.

ment and was unconstitutional. Having made this determination, our next inquiry is whether the evidence obtained as a result of the unconstitutional search should be suppressed. It is in this context that we examine the good-faith exception to the exclusionary rule.

Whether reliance on caselaw can form a basis to invoke the good-faith exception to the exclusionary rule is a significant legal question. The United States Supreme Court has been silent on this issue. The Sixth Circuit and Tenth Circuit courts of appeals have expanded the good-faith exception to apply to a law enforcement officer's reliance on caselaw. In *McCane* and similarly in *Lopez*, however, it was the clear and established law of the circuit that law enforcement officers were vested with the right to search a vehicle incident to a recent occupant's arrest. *McCane*, 573 F3d at 1041-1042 (citing several Tenth Circuit opinions upholding searches without regard to the nature of the offense and in which the defendant was already restrained); *Lopez III*, 2009 WL 3112127 at *2; 2009 US Dist LEXIS 87720 at *7 ("Like its sister circuits prior to *Gant*, the Sixth Circuit recognized as lawful under *Belton* searches of vehicles conducted incident to an arrest even in circumstances where the arrestee did not have access to the passenger compartment of his car."). See also *Grote I*, 629 F Supp 2d at 1205 (noting that at the time the defendant's vehicle was searched it was "well accepted in the Ninth Circuit and elsewhere" that police could search a motor vehicle incident to a lawful arrest "without regard to whether an arrestee was secured or unsecured, and without regard to whether evidence particular to the crime of arrest might be found in the vehicle").

Assuming without deciding that reliance on Michigan caselaw can form a basis to invoke the good-faith exception to the exclusionary rule, we conclude that the exception does not apply in the present case. Unlike *Lopez* and *McCane*, in which the caselaw in each circuit was established and clear, the instant case represented the first published case in Michigan to address the applicability and extension of *Belton* to a vehicle search solely incident to a passenger's arrest. Indeed, this panel published its prior opinion in this matter because we concluded that this issue presented a matter of first impression in Michigan. Given our conclusion that the law in this state on this point was not established and clear, the search and seizure of evidence from defendant's vehicle could not, as a matter of law, have been premised on law enforcement's good-faith reliance on caselaw. We therefore conclude that the good-faith exception to the exclusionary rule has no application in the present case. Pursuant to the retroactivity doctrine, defendant is entitled to have the rule of law announced in *Gant* applied to this case.

### III. CONCLUSION

We affirm the circuit court's order granting defendant's motion to suppress evidence and quash the information.