PEOPLE v SHORT

Docket No. 292288. Submitted June 15, 2010, at Lansing. Decided
August 26, 2010, at 9:10 a.m.

Reginal L. Short was charged in the Saginaw Circuit Court with various
weapons offenses after firearms were found in his vehicle when it was
searched incident to his arrest for driving without a license or
insurance. Defendant was secured in the back seat of the patrol car
when the police officer searched his vehicle. Defendant moved to
suppress the evidence of the weapons, arguing that the search
violated his Fourth Amendment rights. The court, Janet M. Boes, J.,
denied defendant's motion following an evidentiary hearing, conclud-
ing that the search was lawful under *New York v Belton*, 453 US 454
(1981), and *Thornton v United States*, 541 US 615 (2004), which
allowed vehicle searches incident to the arrest of a recent occupant
even if there was no possibility the person arrested could gain access
to the vehicle. The United States Supreme Court decided *Arizona v
Gant*, 556 US ___; 129 S Ct 1710 (2009), the same day as defendant's
hearing, narrowing the *Belton* rule. On reconsideration, the trial
court again denied defendant's motion, concluding that while the
search might have been unlawful under *Gant*, the officer had acted
reasonably and in good faith in reliance on *Belton*. Defendant
appealed.

The Court of Appeals *held*:

Under *Gant*, police officers may search a vehicle incident to a
recent occupant's arrest only when the arrestee is unsecured and
within reaching distance of the passenger compartment of the vehicle
or if it is reasonable to believe that evidence relevant to the crime of
arrest might be found in the vehicle. Although *Gant* applied retroac-
tively to this case because the case was pending when the court issued
*Gant*, the evidence obtained from the unlawful search need not be
automatically excluded. Under the good-faith exception to the exclu-
sionary rule, if the police officers acted in good-faith reliance on
caselaw existing at the time of the search, exclusion may not be an
appropriate remedy. In the present case, the vehicle search was lawful
under the law existing at the time of the search. Because it was
objectively reasonable for the officer to rely on the caselaw existing at
the time of the search, even though that caselaw was subsequently

overturned, the good-faith exception to the exclusionary rule applied, and the trial court correctly denied defendant's motion to suppress the evidence.

Affirmed.

1. SEARCHES AND SEIZURES — ARREST — VEHICLE SEARCHES INCIDENT TO ARREST.

*Arizona v Gant*, 556 US 332 (2009), which held that police officers may search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the vehicle's passenger compartment or if it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle, applies retroactively to cases pending at the time the Court issued the opinion (US Const, Am XIV).

2. SEARCHES AND SEIZURES — FOURTH AMENDMENT — EXCLUSIONARY RULE — GOOD-FAITH EXCEPTION.

The good-faith exception to the exclusionary rule applies to an otherwise unlawful search when a police officer undertakes the search in reasonable and good-faith reliance on caselaw in existence at the time of the search, even if the caselaw is subsequently overturned (US Const, Am XIV).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Randy L. Price*, Assistant Prosecuting Attorney, for the people.

*James F. Piazza* for defendant.

Before: MURRAY, P.J., and SAAD and M. J. KELLY, JJ.

SAAD, J. The prosecutor charged defendant with carrying a dangerous weapon with unlawful intent, MCL 750.226; being a felon in possession of a firearm, MCL 750.224f; carrying a concealed weapon, MCL 750.227; and possession of a firearm during the commission of a felony (two counts), MCL 750.227b. Defendant appeals by leave granted the trial court's order that denied his motion to suppress evidence. We affirm.

I. NATURE OF THE CASE AND ISSUE OF FIRST IMPRESSION

A disputed search of defendant's vehicle after defendant was arrested and placed in the back of a police car raises a Fourth Amendment issue of first impression under Michigan law that was left unresolved by our Court's recent opinion in *People v Mungo (On Remand)*, 288 Mich App 167; 792 NW2d 763 (2010). In light of the United States Supreme Court's decision in *Arizona v Gant*, 556 US 332; 129 S Ct 1710; 173 L Ed 2d 485 (2009), which overruled the well-established rule in *New York v Belton*, 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), and its progeny, we must consider whether an officer's good-faith reliance on caselaw that is later overturned may form a proper basis to avoid the operation of the exclusionary rule. For the reasons explained below, and pursuant to the reasoning of rulings of the courts of appeals for the tenth and eleventh federal circuits, we hold that the good-faith exception applies and the trial court correctly denied defendant's motion to suppress.

II. FACTS AND PROCEEDINGS

Michigan State Police Trooper Jasen Sack testified at the hearing on defendant's motion to suppress evidence of two weapons found in his vehicle. Trooper Sack testified that on January 13, 2009, at around midnight, he observed defendant's vehicle traveling west on Webber Street in Saginaw. As defendant turned north onto Maplewood Avenue, Trooper Sack noticed that defendant's vehicle did not have a license plate. Trooper Sack and his partner turned their patrol car around to pursue defendant's vehicle. As defendant pulled into the parking lot of a convenience store and parked his car, Trooper Sack followed and activated the patrol car's flashing lights. Trooper Sack stopped his patrol car

approximately 10 to 15 feet away from defendant's vehicle. According to Trooper Sack, defendant stepped out of his vehicle, Trooper Sack alighted from his patrol car, and defendant began to walk toward the troopers. Trooper Sack asked defendant about his license plate, and defendant said he did not have one. Trooper Sack testified that, because defendant also stated that he did not have a driver's license or insurance, Trooper Sack placed defendant under arrest for driving with no operator's license and no insurance. Trooper Sack handcuffed defendant and placed him in the back of the patrol car.

Defendant offered testimony similar to Trooper Sack's except, according to defendant, he had exited his vehicle and was walking toward the entrance of the convenience store when he noticed that the troopers had followed him into the parking lot. Defendant further testified that the troopers asked him to come toward them and, after answering some questions about his license and insurance, he was arrested and placed in the back of the patrol car. It is undisputed that Trooper Sack searched defendant's vehicle after defendant was handcuffed and placed inside the patrol car. When he searched the inside of defendant's car, Trooper Sack found a rifle with a cut stock, a .223 caliber assault rifle, and four or five ammunition magazines.

Defendant moved to suppress evidence of the weapons found in his vehicle on the ground that the search of his vehicle violated his Fourth Amendment rights. Defendant also sought to suppress evidence obtained during a subsequent search of his home. After taking testimony from Trooper Sack and defendant on April 21, 2009, the trial court denied defendant's motion to suppress. The court ruled that the search of defendant's vehicle was constitutional pursuant to *Belton* and *Thornton v United States*, 541 US 615; 124 S Ct 2127; 158 L Ed 2d 905 (2004). On

the day of the suppression hearing, the United States
Supreme Court decided *Gant*, which, in essence, narrowed
the application of *Belton*. The trial court reconsidered
defendant's motion to suppress, but again denied the
motion on the ground that, while the search may have
been unconstitutional under *Gant*, when the trooper
conducted the search he had acted reasonably and in
good-faith reliance on *Belton*. Accordingly, the trial court
applied the good-faith exception to the exclusionary rule
and declined to suppress the evidence.

### III. ANALYSIS

Defendant argues that *Gant* applies retroactively, the
search of his vehicle was unconstitutional pursuant to
*Gant*, and the trial court should not have applied the
good-faith exception to the exclusionary rule because
the exception does not or ought not apply to warrantless
searches under Michigan law. The prosecution acknowl-
edges that *Gant* applies retroactively to this case and
that, pursuant to *Gant*, the search of defendant's ve-
hicle violated his Fourth Amendment rights. However,
the prosecution argues that, because Trooper Sack
relied on the longstanding rule in *Belton* and its prog-
eny that permitted him to conduct a search of the
vehicle incident to defendant's arrest, the trial court
correctly applied the good-faith exception.

As this Court explained in *People v Hyde*, 285 Mich
App 428, 436; 775 NW2d 833 (2009), "[w]e review for
clear error a trial court's findings of fact in a suppres-
sion hearing, but we review de novo its ultimate deci-
sion on a motion to suppress." This Court also reviews
de novo whether an exclusionary rule applies. *Id*.

The parties are correct that, pursuant to the Su-
preme Court's holding in *Gant*, the search of defen-
dant's vehicle was unconstitutional. Under *Belton* and

its progeny, it was lawful for an officer to search a vehicle "incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 556 US at 341. However, the Court in *Gant* rejected this widely accepted reading of *Belton* and ruled that, pursuant to *Chimel v California*, 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), police officers may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 US at 343. A vehicle search is also permissible if it is " 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Id.*, quoting *Thornton*, 541 US at 632 (Scalia, J., concurring in the judgment). As noted earlier, defendant was handcuffed and secured in the back of the police car when Trooper Sack conducted the search. Also, defendant was arrested for operating a vehicle without a license and without insurance, so the officers could not reasonably have expected to find inside the vehicle any evidence related to the reason for defendant's arrest. Accordingly, the search of defendant's vehicle violated the Fourth Amendment as interpreted in *Gant*.

The parties are also correct that *Gant* applies retroactively to this case under *Griffith v Kentucky*, 479 US 314, 328; 107 S Ct 708; 93 L Ed 2d 649 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). Though *Gant* was decided well after defendant's arrest and the vehicle search, defendant's case was pending in the trial court when the

Supreme Court issued its opinion and, thus, defendants' holding in *Gant* applies. However, retroactive application of *Gant* does not necessarily require suppression of the disputed evidence. "[W]hether the exclusion of evidence is an appropriate sanction in a particular case is a separate issue from whether police misconduct violated a person's Fourth Amendment rights." *People v Goldston*, 470 Mich 523, 529; 682 NW2d 479 (2004). When there has been a violation of a defendant's Fourth Amendment rights, the exclusionary rule generally bars the use of the disputed evidence at trial, *Mungo*, 288 Mich App at 176, citing *United States v Leon*, 468 US 897, 906; 104 S Ct 3405; 82 L Ed 2d 677 (1984), but our courts have also recognized that exclusion is not an automatic remedy for an unlawful search. As the *Mungo* Court explained:

> The purpose of the exclusionary rule is to deter police misconduct. [*Leon*, 468 US at 906]. In *Leon*, the United States Supreme Court established a good-faith exception to the exclusionary rule, noting that application of the exclusionary rule requires weighing the benefits of the resulting deterrence of police misconduct against the costs incurred by preventing the introduction of otherwise valid evidence. *Id.* at 906-907. The *Leon* Court concluded that circumstances could exist in which these costs could outweigh any slight benefits gained by application of the exclusionary rule. For example, if a law enforcement officer acted in good faith and in an objectively reasonable manner on a search warrant later found to be defective because of a judicial error, excluding the evidence obtained in the search would not operate to deter police misconduct. *Id.* at 920-921. The *Leon* Court concluded that the exclusionary rule should be applied on a case-by-case basis, and only if application would deter police misconduct. *Id.* at 918. [*Mungo*, 288 Mich App at 176.]

Contrary to defendant's position on appeal, this Court has rejected the view "that the retroactivity doctrine

precludes application of the good-faith exception to the exclusionary rule." *Id.* at 182. Indeed, the fact that *Gant* applies retroactively does not preclude the court from considering the good-faith exception when it determines an appropriate remedy. *Id.*

The question of first impression presented here is whether an officer's good-faith reliance on caselaw may prevent exclusion of the disputed evidence at trial. The United States Court of Appeals for the Sixth Circuit has not ruled on this question, and the federal district courts in Michigan disagree on the matter. See *United States v Schuttpelz*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued January 15, 2010 (Case No. 07-20410); 2010 WL 200827, at *4 (stating that even if the search would have violated *Gant*, *Belton* "was the law of the land" at the time of the search and the good-faith exception applies); *United States v Peoples*, 668 F Supp 2d 1042, 1050-1051 (WD Mich, 2009) (declining to extend the good-faith exception to include an officer's good-faith reliance on existing caselaw). This Court discussed but did not decide this question in *Mungo*, 288 Mich App at 183:

> Whether reliance on caselaw can form a basis to invoke the good-faith exception to the exclusionary rule is a significant legal question. The United States Supreme Court has been silent on this issue. The Sixth Circuit and Tenth Circuit courts of appeals have expanded the good-faith exception to apply to a law enforcement officer's reliance on caselaw. In [*United States v McCane*, 573 F3d 1037 (CA 10, 2009)] and similarly in [*United States v*] *Lopez*,[1] however, it was the clear and established law of

---

[1] *United States v Lopez*, unpublished memorandum opinion of the United States District Court for the Eastern District of Kentucky, issued September 23, 2009 (Case No. 6:06-120-DCR); 2009 WL 3112127; 2009 US Dist LEXIS 87720 (*Lopez III*).

the circuit that law enforcement officers were vested with the right to search a vehicle incident to a recent occupant's arrest. *McCane*, 573 F3d at 1041-1042 (citing several Tenth Circuit opinions upholding searches without regard to the nature of the offense and in which the defendant was already restrained); *Lopez III*, 2009 WL 3112127 at *2, 2009 US Dist LEXIS 87720 at *7 ("Like its sister circuits prior to *Gant*, the Sixth Circuit recognized as lawful under *Belton* searches of vehicles conducted incident to an arrest even in circumstances where the arrestee did not have access to the passenger compartment of his car."). See also [*United States v Grote*, 629 F Supp 2d 1201, 1205 (ED Wash, 2009)] (noting that at the time the defendant's vehicle was searched it was "well accepted in the Ninth Circuit and elsewhere" that police could search a motor vehicle incident to a lawful arrest "without regard to whether an arrestee was secured or unsecured, and without regard to whether evidence particular to the crime of arrest might be found in the vehicle").

Notwithstanding its acknowledgement of the *probability* that the good-faith exception can be premised on an officer's reliance on existing caselaw in Michigan, the Court in *Mungo* declined to rule on the question because *Mungo* involved an issue of first impression about whether the rule in *Belton* could be extended "to a vehicle search solely incident to a *passenger's* arrest." *Id.* at 184 (emphasis added). The *Mungo* Court explained:

Given our conclusion that the law in this state on this point was not established and clear, the search and seizure of evidence from defendant's vehicle could not, as a matter of law, have been premised on law enforcement's good-faith reliance on caselaw. We therefore conclude that the good-faith exception to the exclusionary rule has no application in the present case. [*Id.*]

In contrast, when the troopers searched defendant's vehicle in this case, the law in this state and, indeed,

throughout the country was well established and abundantly clear: Under *Belton* and its progeny, the search of defendant's vehicle was lawful incident to defendant's arrest.

At the time Trooper Sack acted, the validity of the search was clearly supported by settled caselaw that was subsequently overruled by *Gant*. Again, the Court in *Belton* ruled that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 US at 460. In *United States v White*, 871 F2d 41, 44 (CA 6, 1989), the Sixth Circuit interpreted *Belton* as permitting the search of a vehicle incident to an arrest "even after the arrestee has been separated from his vehicle and is no longer within reach of the vehicle or its contents." Indeed, the court in *White* specifically held, "[I]n this Circuit, our consistent reading of *Belton* has been that, once a police officer has effected a valid arrest, that officer can search the area that is *or was* within the arrestee's control." *Id.*; see also *United States v Martin*, 289 F3d 392, 399-400 (CA 6, 2002). Trooper Sack testified that he turned on the flashing lights of his patrol vehicle as he followed defendant into the convenience store parking lot. As the Sixth Circuit opined in *United States v Hudgins*, 52 F3d 115, 119 (CA 6, 1995):

> Where the officer initiates contact with the defendant, either by actually confronting the defendant *or by signaling confrontation with the defendant*, while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile), a subsequent search of the automobile's passenger compartment falls within the scope of *Belton* and will be upheld as reasonable. [Emphasis added.]

And, though defendant maintains that he was away from his vehicle and walking toward the convenience store when the troopers approached him, this does not help his case because in *Thornton*, the Supreme Court ruled that, as long as the arrestee was a *recent* occupant of the vehicle, an officer may conduct a search of the vehicle "even when an officer does not make contact until the person arrested has left the vehicle." *Thornton*, 541 US at 617. Thus, regardless of which version of events is true, the search was clearly valid under caselaw existing at the time of the search.

The majority in *Gant* recognized that *Belton* "has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 556 US at 341. Indeed, the Court observed that the Arizona Supreme Court's "reading of *Belton* has been widely taught in police academies and . . . law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years . . . ." *Id.* at 349. Justice Breyer noted the "considerable reliance" on the "bright-line rule that permits a warrantless search of the passenger compartment of an automobile incident to the lawful arrest of an occupant—regardless of the danger the arrested individual in fact poses." *Id.* at 354-355 (Breyer, J., dissenting). Justice Alito further opined:

> The *Belton* rule has been taught to police officers for more than a quarter century. Many searches—almost certainly including more than a few that figure in cases now on appeal—were conducted in scrupulous reliance on that precedent. It is likely that, on the very day when this opinion is announced, numerous vehicle searches will be conducted in good faith by police officers who were taught the *Belton* rule. [*Id.* at 359 (Alito, J., dissenting).]

Thus, it is beyond dispute that, before *Gant*, it was broadly understood that the precise actions taken by Trooper Sack to search defendant's vehicle were constitutionally sound.

Again, "[t]he purpose of the exclusionary rule is to deter police misconduct." *Goldston*, 470 Mich at 526. Courts have long recognized that "where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.' " *Leon*, 468 US at 919-920, quoting *Stone v Powell*, 428 US 465, 539-540; 96 S Ct 3037; 49 L Ed 2d 1067 (1976) (White, J., dissenting).

Excluding the evidence in this case does nothing to "remov[e] incentives to engage in unreasonable searches and seizures." *Goldston*, 470 Mich at 529. In light of the overwhelming majority of cases that have explicitly approved conduct identical to that of the trooper in this case, we hold that the trial court properly applied the good-faith exception to the exclusionary rule. Indeed, "[t]he lack of deterrence likely to result from excluding evidence from searches done in good-faith reliance upon settled circuit precedent indicates the good-faith exception should apply in this context." *McCane*, 573 F3d at 1044 n 5. Accordingly, we agree with and adopt the reasoning of the United States Court of Appeals for the Tenth Circuit in *McCane*, 573 F3d at 1044-1045:

> Two inseparable principles have emerged from the Supreme Court cases and each builds upon the underlying purpose of the exclusionary rule: deterrence. First, the exclusionary rule seeks to deter objectively unreasonable police conduct, i.e., conduct which an officer knows or should know violates the Fourth Amendment. *See, e.g.,*

*Herring* [*v United States*, 555 US 135, 141-146; 129 S Ct 695; 172 L Ed 2d 496 (2009); *Illinois v Krull*, 480 US 340, 348-349; 107 S Ct 1160; 94 L Ed 2d 364 (1987)]. Second, the purpose of the exclusionary rule is to deter misconduct by law enforcement officers, not other entities, and even if it was appropriate to consider the deterrent effect of the exclusionary rule on other institutions, there would be no significant deterrent effect in excluding evidence based upon the mistakes of those uninvolved in or attenuated from law enforcement. *See, e.g.*, [*Arizona v Evans*, 514 US 1, 14-15; 115 S Ct 1185; 131 L Ed 2d 34 (1995)]; *Krull*, 480 U.S. at 351-52, 107 S.Ct. 1160; *Leon*, 468 U.S. at 916-17, 104 S.Ct. 3405. Based upon these principles, we agree with the government that it would be proper for this court to apply the good-faith exception to a search justified under the settled case law of a United States Court of Appeals, but later rendered unconstitutional by a Supreme Court decision.

Just as there is no misconduct on the part of a law enforcement officer who reasonably relies upon the mistake of a court employee in entering data, *Evans*, 514 U.S. at 15, 115 S.Ct. 1185, or the mistake of a legislature in passing a statute later determined to be unconstitutional, *Krull*, 480 U.S. at 349-50, 107 S.Ct. 1160, a police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct. The refrain in *Leon* and the succession of Supreme Court good-faith cases is that the exclusionary rule should not be applied to "objectively reasonable law enforcement activity." [*Leon*, 468 US at 919]. Relying upon the settled case law of a United States Court of Appeals certainly qualifies as objectively reasonable law enforcement behavior.

The Eleventh Circuit also recently ruled "that the exclusionary rule does not apply when the police conduct a search in objectively reasonable reliance on our well-settled precedent, even if that precedent is subse-

quently overturned." *United States v Davis*, 598 F3d 1259, 1264 (CA 11, 2010).[2] As the Court explained in *Davis*:

> The [Supreme] Court has gradually expanded this good-faith exception to accommodate objectively reasonable police reliance on: subsequently invalidated search warrants, *Leon*, 468 U.S. 897, 104 S.Ct. 3430; subsequently invalidated statutes, *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); inaccurate court records, *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); and negligently maintained police records, *Herring*, 129 S.Ct. 695, 172 L.Ed.2d 496. In each of its decisions expanding the exception, the Court has concluded that the unlawful police conduct at issue was neither "sufficiently deliberate that exclusion [could] meaningfully deter it" nor "sufficiently culpable that such deterrence [would be] worth the price paid by the justice system." *Herring*, [555 US at 144] 129 S.Ct. at 702. [*Id.* at 1265.]

Like the officer in *Davis*, Trooper Sack did not intentionally violate defendant's rights and he cannot be "held responsible for the unlawfulness of the search he conducted." *Id.* As discussed, at the time Trooper Sack conducted the search, our courts adhered to the nearly universally accepted reading of *Belton* that an officer may search a vehicle incident to a lawful arrest. Law enforcement officers are entitled to, and indeed must, rely on court decisions that define appropriate police conduct, and it is illogical to impose "the extreme sanction of exclusion" when a clear rule of conduct is later abrogated by the Supreme Court. *Leon*, 468 US at 916. Accordingly, though the well-settled interpretation of *Belton* was changed by *Gant*, because it was objec-

---

[2] As the court noted in *Davis*, 598 F3d at 1263, the Fifth Circuit ruled in 1987 that evidence should not be excluded if an officer conducted a search in good-faith reliance on caselaw from that circuit even if the caselaw was later overturned. *United States v Jackson*, 825 F2d 853, 866 (CA 5, 1987).

tively reasonable for Trooper Sack to have relied on that precedent, the good-faith exception to the exclusionary rule applies and the trial court correctly denied defendant's motion to suppress.

Affirmed.