PEOPLE v MUNGO

Docket No. 269250. Submitted August 7, 2007, at Lansing. Decided
January 17, 2008, at 9:00 a.m. Leave to appeal sought.

Michael W. Mungo was charged in the Washtenaw Circuit Court with
unlawfully carrying a concealed weapon. The weapon was found in
the passenger compartment of his automobile during a search
conducted after a routine traffic stop after it was determined that
a passenger in the automobile had two outstanding warrants
issued for failing to appear in court for traffic violations and the
passenger was arrested. The court, David S. Swartz, J., granted the
defendant's motion to suppress evidence of the gun found during
the search and quashed the information. The prosecution ap-
pealed.

The Court of Appeals *held*:

When a police officer has made a lawful custodial arrest of a
passenger of an automobile, he or she may, as a contemporaneous
incident of that arrest, search the passenger compartment of that
automobile. This rule applies even though, before the search, there
was no probable cause to believe that the automobile contained
contraband or that the driver and owner of the automobile had
engaged in any unlawful activity. The nature of the charges that
give rise to the arrest of the passenger are not relevant with regard
to the implementation of the search-incident-to-a-lawful-arrest
rule. The order suppressing the evidence and quashing the infor-
mation must be reversed and the matter must be remanded for
entry of an order denying the defendant's motion to suppress the
evidence and for reinstatement of the charge.

Reversed and remanded.

SEARCHES AND SEIZURES — AUTOMOBILES — ARREST OF PASSENGERS.

The Fourth Amendment permits a police officer to search the
interior of an automobile incident to the lawful arrest of passenger
in the automobile, regardless of whether the officer has reason to
believe that the automobile contains contraband or that the
operator of the automobile has engaged in illegal activity (US
Const, Am IV).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Senior Assistant Prosecuting Attorney, for the people.

*The Mungo Law Firm, PLC* (by *Leonard Mungo*), and *Ferris & Salter, P.C.* (by *Don Ferris*), for the defendant.

Before: WHITBECK, C.J., and TALBOT and ZAHRA, JJ.

ZAHRA, J. The prosecution appeals as of right the circuit court's order granting defendant's motion to suppress evidence and quash the information. The circuit court suppressed evidence of a gun found as a result of a search of defendant's car following a routine traffic stop and the arrest of a passenger in defendant's car. Defendant, who was operating his car when it was stopped by a police officer, was charged with unlawfully carrying a concealed weapon pursuant to MCL 750.227. The issue presented in this case is whether a police officer may search a car incident to a passenger's arrest where before the search there was no probable cause to believe that the car contained contraband or that the driver and owner of the car had engaged in any unlawful activity. We hold that such a search is a constitutionally permissible search incident to a lawful arrest. We reverse and remand for entry of an order denying defendant's motion to suppress evidence of the gun and for reinstatement of the charge.

## I. BASIC FACTS AND PROCEDURE

Washtenaw County Sheriff's Deputy Ryan Stuck lawfully initiated a traffic stop of a car driven by defendant. Mark Dixon was the sole passenger in the car. Upon request, defendant produced the vehicle reg-

istration and proof of insurance. Deputy Stuck also requested the occupants' driver's licenses and ran Law Enforcement Information Network (LEIN) checks on both Dixon and defendant. Deputy Stuck found that Dixon had two outstanding warrants issued for failing to appear in court to answer traffic-violation charges. Deputy Stuck arrested Dixon, asked his dispatcher to send another officer to assist him, and secured Dixon in the backseat of his squad car. Deputy Stuck directed defendant to step out of his car and conducted a pat-down search.[1] Thereafter, Deputy Stuck searched defendant's car and found an unloaded gun in a case underneath the driver's seat and ammunition in the glove compartment. Deputy Stuck asked defendant to

---

[1] While conducting the pat-down search, Deputy Stuck asked defendant if he had any knives, weapons, or contraband in his car. Defendant stated that there was an unloaded gun beneath the driver's seat and a magazine with ammunition in the glove compartment. Defendant further maintained that he had a permit to carry a concealed weapon. However, defendant was never issued a permit to carry a concealed weapon. The litigants never fully presented or argued in this Court or in the circuit court whether defendant's admission constituted probable cause to search the vehicle and seize the firearm. The record is unclear on whether the prosecutor conceded that the incriminating statement made by defendant was obtained in violation of his *Miranda* rights. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). This Court, on its own motion, ordered the parties to address at oral argument the question whether the inquiry that led to defendant's incriminating statement occurred during a custodial interrogation under *Miranda*. *People v Mungo*, unpublished order of the Court of Appeals, entered July 26, 2007 (Docket No. 269250). In this Court, the prosecution represented that the circuit court misapprehended any concession in regard to defendant's admission. Because we are deciding this matter by applying the rule in *New York v Belton*, 453 US 454, 458-460; 101 S Ct 2860; 69 L Ed 2d 768 (1981), that, when a police officer has made a lawful custodial arrest of an occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile, we need not address whether the prosecutor conceded that defendant's incriminating admission was obtained in violation of *Miranda*.

produce a permit to carry a concealed weapon. However, defendant produced only a permit to purchase a firearm. Defendant's LEIN check did not reveal that he had been issued a concealed-weapons permit. Deputy Stuck arrested defendant for unlawfully carrying a concealed weapon.

In the circuit court, defendant moved to quash the information and suppress evidence of the gun. The prosecutor relied on *New York v Belton*, 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), to argue that the arrest of any person in a car justifies a search of the passenger compartment of that car. The prosecutor argued that the search that led to the discovery of the gun was constitutionally permissible because Dixon, a passenger in defendant's car, was lawfully arrested. Defendant relied on *State v Bradshaw*, 99 SW3d 73 (Mo App, 2003), a case in which a divided panel of the Missouri Court of Appeals distinguished *Belton* and held that police officers cannot lawfully search a driver's vehicle following the arrest of a passenger where the passenger was safely arrested and there was no reasonable suspicion that the driver possessed unlawful items.

The circuit court distinguished *Belton* and followed *Bradshaw*. The circuit court concluded that defendant was not under arrest at the time Deputy Stuck searched his car. The circuit court further concluded that defendant had a protected privacy interest in his car. The circuit court held that there was no probable cause to arrest defendant and, therefore, the search of his car was not constitutionally permissible. This appeal followed.

## II. ANALYSIS

The Fourth Amendment of the United States Constitution provides that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[2]

There are, however, several recognized exceptions to the warrant requirement. One exception is that police officers may conduct a search without a warrant of a person and the area immediately around the person incident to a lawful arrest. *United States v Robinson*, 414 US 218, 235; 94 S Ct 467; 38 L Ed 2d 427 (1973); *Gustafson v Florida*, 414 US 260, 266; 94 S Ct 488; 38 L Ed 2d 456 (1973). However, the exception only allows a search of the area immediately surrounding the person arrested and, thus, does not allow the officer to routinely search "any room other than that in which the arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." *Chimel v California*, 395 US 752, 763; 89 S Ct 2034; 23 L Ed 2d 685 (1969).

In the motor-vehicle context, the search-incident-to-an-arrest exception permits a search of the interior of a car contemporaneous with the arrest of the car's operator. See *Belton, supra.* Yet, a vehicle search incident to

---

[2] Similarly, Const 1963, art 1, § 11 provides that "[t]he person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation." However Const 1963, art 1, § 11 further provides that "[t]he provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state." Thus, the Michigan Constitution does not bar the above-referenced contraband from evidence unless the Fourth Amendment of the United States Constitution bars it from evidence.

an arrest does not extend to the trunk. *Belton, supra* at 461 n 4. These restrictions are based on the privacy interests of the person being searched.

The situation presented in this case—where the passenger is arrested and there is no probable cause to believe before a search of the car that the car contains any contraband or that the driver has engaged in illegal activity—requires us to establish a rule of law that will either impinge on a driver's general privacy interest in his or her car or carve out an exception to the search-incident-to-an-arrest rule.

### A. STANDARD OF REVIEW

A circuit court's decision to dismiss a charge on legal grounds is reviewed de novo. *People v Owen*, 251 Mich App 76, 78; 649 NW2d 777 (2002). A circuit court's findings of fact are reviewed for clear error. MCR 2.613(C).

### B. THE EXPECTATION OF PRIVACY IN AUTOMOBILES

Fourth Amendment jurisprudence establishes that one's reasonable expectation of privacy in a car is substantially reduced compared to the expectation of privacy one has in a dwelling or in other personal property, such as a computer or the contents of a safety-deposit box or leased storage space. As this Court recognized in *People v Carter*, 250 Mich App 510, 517-518; 655 NW2d 236 (2002), the United States Supreme Court has consistently held that the government's legitimate need to regulate automobiles greatly diminishes the expectation of privacy in one's automobile. In *California v Carney*, 471 US 386, 392; 105 S Ct 2066; 85 L Ed 2d 406 (1985), the Supreme Court observed:

These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. *Cady v. Dombrowski* [413 US 433, 440-441; 93 S Ct 2523; 37 L Ed 2d 706 (1973)]. As we explained in *South Dakota v. Opperman* [428 US 364, 368; 96 S Ct 3092; 49 L Ed 2d 1000 (1976)], an inventory search case:

"Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order." 428 U.S., at 368.

The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation.

See, also, *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996).

For this reason, Fourth Amendment jurisprudence recognizes an "automobile exception" that allows searches or seizures without a warrant of automobiles based on probable cause to believe that the vehicle contains contraband. *United States v Ross*, 456 US 798; 102 S Ct 2157; 72 L Ed 2d 572 (1982). The two bases justifying this exception are the inherent mobility of vehicles and the pervasive regulation of vehicles, which reduce the expectation of privacy. *Carney, supra.* The automobile exception does not apply in the instant case because before the search Deputy Stuck did not have probable cause to believe that defendant's vehicle contained contraband. Still, *Ross, Carney, Oppermen,* and *Labron* all stand for the proposition that Fourth Amendment privacy interests in automobiles are lim-

ited, flexible, and subject to contraction, especially where other legitimate governmental interests are implicated.

### C. THE BRIGHT-LINE RULE FOR SEARCHES INCIDENT TO A LAWFUL ARREST

The Supreme Court of the United States has clearly indicated a preference for a bright-line rule for searches without a warrant and incident to lawful arrests. Considering this preference in light of the limitations on legitimate expectations of privacy in one's automobile, we conclude that automobile searches incident to the arrest of an automobile passenger are constitutionally permissible, even when there is no reason to believe the automobile contains evidence that the driver of the automobile is engaged in illegal activity. Support for our conclusion is found in a review of the caselaw that developed the rule on search incident to an arrest.

In *Chimel, supra* at 763, the Supreme Court held that searches concurrent with and incident to an arrest are justified and constitutionally permissible because

> it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape [and also] to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

The Supreme Court further noted that a search of the area within the arrestee's " 'immediate control' " was similarly justified. *Id*. Four years later in *Robinson* and in *Gustafson* the Supreme Court observed that there are instances when an arrest will not give rise to a belief that the person is armed or in possession of illegal materials. While recognizing that such instances fall outside the rationale articulated in *Chimel* to support

searches incident to an arrest, the Supreme Court nonetheless concluded that such searches are reasonable per se:

> [O]ur more fundamental disagreement with the Court of Appeals arises from its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. We do not think the long line of authorities of this Court . . . or what we can glean from the history of practice in this country and in England, requires such a case-by-case adjudication. A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found . . . . [*Robinson, supra* at 235.]

While *Chimel* and *Robinson* both arose in the context of a search of a person incident to that person's arrest, the same reasoning applies to cases addressing the search of areas within the immediate control of the arrestee.

In *Thornton v United States*, 541 US 615, 622; 124 S Ct 2127; 158 L Ed 2d 905 (2004), a majority of the United States Supreme Court held that a police officer may search a vehicle on the basis of the arrest of a recent driver who was already out of the car when the officer made contact.[3] In *Thornton*, the officer learned that the defendant's vehicle bore license tags for a

---

[3] Five justices joined all but footnote 4 of the majority opinion in *Thornton*. Justice O'Connor did not concur in footnote 4, writing separately to express her "dissatisfaction with the state of the law in this area." *Id.* at 624. In footnote 4, the four-justice plurality addressed

different vehicle. Before the officer could stop the defendant's car, the defendant parked the car and walked away from it. The officer approached the defendant and conducted a pat-down search of his person, which revealed marijuana. The officer arrested him, placed him in the police car, and searched the defendant's car. The search revealed a gun under the driver's seat. *Id.* at 617-618. The defendant argued that the search-incident-to-an-arrest rule did not apply when the officer did not make contact with the suspect until after he got out of the car and could no longer access its contents. The Court rejected this argument, explaining:

> To be sure, not all contraband in the passenger compartment is likely to be readily accessible to a "recent occupant." It is unlikely in this case that petitioner could have reached under the driver's seat for his gun once he was outside of his automobile. But the firearm and the passenger compartment in general were no more inaccessible than were the contraband and the passenger compartment in *Belton*. The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment. [*Id.* at 622-623.]

*Thornton* is instructive because it emphasizes the importance of the search-incident-to-an-arrest doctrine in preventing the arrestee from accessing weapons or contraband in the car, even when there is little likelihood of doing so. The Court determined that the

comments that Justice Scalia raised in his concurrence, stating that it was the wrong case in which to address them. *Id.* at 624 n 4.

importance of this interest justified a bright-line rule permitting vehicle searches incident to arrest even in circumstances where it was not apparently necessary to disarm a suspect or preserve evidence.

### D. THE SEARCH IS CONSTITUTIONALLY PERMITTED UNDER *BELTON*

We find no merit in defendant's argument that *Belton* is distinguishable from the present case and ought not be applied under these circumstances. Defendant emphasizes in his argument that, before searching the automobile, the police officer in *Belton* had reasonable cause to believe that all the occupants of the car were engaged in illegal activity. The implication is that the Supreme Court only sanctioned the search of Belton's jacket, in which the contraband was found, because Belton himself or perhaps the driver of the car had been arrested. However, as noted by Justice Rehnquist in *Belton*, *supra* at 463 (Rehnquist, J., concurring), the majority did not rest its decision on the automobile exception. Instead, the Supreme Court elected to premise its decision in *Belton* on the search-incident-to-an-arrest exception. In doing so, the Supreme Court carefully crafted its opinion. In its statement of facts, the Supreme Court indicated that "[t]here were four men in the car, one of whom was Roger Belton, the respondent in this case." *Belton*, *supra* at 455. Significantly, the Supreme Court did not premise its holding in *Belton* on the arrest of the driver of the car, Belton, or any other passenger. Rather, the Supreme Court set forth the concisely worded rule: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, *supra* at

460.[4] This is precisely what occurred in this case. Deputy Stuck made an arrest of Dixon, an occupant of the vehicle owned and operated by defendant. Consequently, Deputy Stuck was constitutionally permitted to conduct a search of the passenger compartment of defendant's car.

Defendant also maintains that *Belton* is distinguishable from the present case because of the minor offense underlying Dixon's arrest—the failure to appear in court for traffic violations. Defendant argues that given this minor offense, there are no legitimate reasons to search his car to ensure the safety of Deputy Stuck. However, concerns for the safety of law-enforcement officers cannot be viewed in hindsight or in a vacuum. In *Robinson, supra* at 234 n 5, Justice Rehnquist questioned the assumption that persons arrested for the offense of driving while their licenses are suspended are less likely to pose a risk to law-enforcement officers than are those arrested for other crimes:

> Such an assumption appears at least questionable in light of the available statistical data concerning assaults on police officers who are in the course of making arrests. The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest.

Justice Rehnquist's observations ring true in this case. It is not the reason for the arrest, but rather that an arrest must be made, that creates risk of harm to the arresting officer. Upon discovering that at least one warrant was issued for Dixon's arrest, Deputy Stuck was obligated by statute to arrest Dixon. MCL 764.9e; MCL 764.1b. We conclude that in carrying out his

---

[4] As further evidence that the Supreme Court chose its words in *Belton* carefully, the Supreme Court reaffirmed the precise language of *Belton*'s holding in *Thornton, supra* at 620.

statutory duty, Deputy Stuck was not constitutionally precluded from searching the area Dixon occupied just before his arrest.

*Belton* and *Thornton* support the adoption and implementation of the bright-line rule in this case. The rule of *Belton* was originally based on a concern for the safety of law-enforcement officers and the need to preserve any evidence that may be in the car. *Belton, supra.* The rule has since been interpreted to permit a full search of the interior of an automobile even when the arrestee has been removed from the car, handcuffed, and placed in a secure area, thus alleviating concerns of officer safety and preservation of any evidence contained in the car. *United States v Karlin,* 852 F2d 968 (CA 7, 1988). This plain interpretation of *Belton* is warranted by the need for a bright-line rule that allows police officers to make accurate and quick decisions in the field. *Id.* Fourth Amendment jurisprudence thus supports the constitutionality of the search at issue in this case.

### E. OUR DISAGREEMENT WITH *MISSOURI v BRADSHAW*

While we have given thoughtful consideration to the reasoning and analysis employed by our fellow jurists in Missouri, our conclusion is directly contrary to *Bradshaw, supra.* We decline to follow the reasoning of *Bradshaw* for several reasons.

First, as pointed out by the dissenting judge in *Bradshaw,* the rationales underlying the search-incident-to-an-arrest rule do not lose their validity when only the passenger of a vehicle is arrested.

Second, as discussed above, we conclude that the relevant facts of *Belton* are not distinguishable from the relevant facts presented in this case. To the contrary, *Belton* strongly supports the conclusion we reach here.

Third, *Bradshaw* found it significant that the passenger in that case was arrested because there was an outstanding warrant for his arrest based on his failure to appear on charges regarding an alcohol-related traffic offense, concluding that "[t]he search of Defendant's vehicle in relation to [the passenger's] arrest . . . would not yield any evidence that could be used against [the passenger]." *Bradshaw, supra* at 78. Following *Bradshaw*, defendant in the present case urges us to consider that because Dixon was arrested for failing to appear for traffic violations there was nothing in defendant's car that needed to be preserved to assist in the prosecution of Dixon. We conclude that the nature of the charges that give rise to the arrest of the passenger ought not be considered by courts or police officers as it relates to implementation of the search-incident-to-a-lawful-arrest rule. As previously noted, a law-enforcement officer's determination regarding how and where a search following an arrest ought to be conducted requires an exercise of snap ad hoc judgment. The Fourth Amendment does not subject this process to hindsight analysis by the courts. *Robinson, supra* at 234-245. The value of a bright-line rule, rather than a situational rule that requires officers to apply abstract principles of Fourth Amendment jurisprudence, justifies applying the search-incident-to-an-arrest rule in the passenger-arrest context even when there is no basis to believe that there is evidence that needs to be preserved or that the arrested passenger will resort to violence.

### III. CONCLUSION

The diminished expectation of privacy in automobiles, considered in conjunction with the need to have a bright-line rule that can accurately and easily be imple-

mented by law-enforcement officers in the field and that promotes the safety of officers and preserves evidence, leads us to conclude that the Fourth Amendment permits police officers to search the interior of an automobile incident to the lawful arrest of its passenger, regardless of whether officers have reason to believe that the automobile contains contraband or the operator of the automobile engaged in illegal activity.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.