PEOPLE v MUNGO (ON SECOND REMAND)

Docket No. 269250. Submitted October 21, 2011, at Lansing. Decided
March 6, 2012, at 9:00 a.m. Leave to appeal denied, 492 Mich 867.

Michael W. Mungo was charged in the Washtenaw Circuit Court with
unlawfully carrying a concealed weapon. In 2005, a police officer had
found a gun under the driver's seat of defendant's automobile during
a search conducted after the officer made a routine traffic stop and
had arrested defendant's passenger on outstanding warrants for
traffic offenses. The court, David S. Swartz, J., granted defendant's
motion to suppress evidence of the gun and quashed the information.
The prosecution appealed, and the Court of Appeals, WHITBECK, C.J.,
and TALBOT and ZAHRA, JJ., reversed and remanded, applying *New
York v Belton*, 453 US 454 (1981), which held that when a police
officer has made a lawful custodial arrest of the occupant of an
automobile, the officer may, as a contemporaneous incident of that
arrest, search the passenger compartment of the automobile. The
Court of Appeals held that a police officer may search an automobile
incident to a passenger's arrest even when before the search there
was no probable cause to believe that the automobile contained
contraband or that the driver and owner of the automobile had
engaged in unlawful activity and that the search was therefore
constitutionally permissible. *People v Mungo*, 277 Mich App 577
(2008) (*Mungo I*). Defendant's application for leave to appeal was
held in abeyance by the Michigan Supreme Court pending the
decision of the United States Supreme Court in *Arizona v Gant*, 556
US 332 (2009). Following the decision in *Gant*, which significantly
limited the application of *Belton* by holding that the police may not
search a vehicle incident to a recent occupant's arrest after the
arrestee has been secured and cannot access the interior of the
vehicle, the Michigan Supreme Court, in lieu of granting leave to
appeal, vacated the judgment in *Mungo I* and remanded the case to
the Court of Appeals for reconsideration in light of *Gant*. *People v
Mungo*, 483 Mich 1091 (2009). On remand, the Court of Appeals,
WHITBECK, P.J., and TALBOT and ZAHRA, JJ., determined that *Gant* had
retroactive effect and applied it to the case. The Court of Appeals
affirmed the circuit court's suppression of the evidence on the basis of
*Gant*, concluding that the search of the automobile without a warrant
was unreasonable and in violation of the Fourth Amendment. *People*

*v Mungo (On Remand)*, 288 Mich App 167 (2010) (*Mungo II*). The Michigan Supreme Court granted the prosecution's application for leave to appeal. *People v Mungo*, 488 Mich 920 (2010). The Michigan Supreme Court then held the appeal in abeyance pending the decision of the United States Supreme Court in *Davis v United States*, 564 US ___; 131 S Ct 2419; 180 L Ed 2d 285 (2011). *People v Mungo*, 795 NW2d 156 (Mich, 2011). After the United States Supreme Court decided *Davis*, holding that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule and therefore the fruit of such searches is not to be suppressed, the Michigan Supreme Court vacated its previous order that granted leave to appeal, vacated the judgment in *Mungo II*, and remanded the case to the Court of Appeals for reconsideration in light of *Davis*. *People v Mungo*, 490 Mich 870 (2011).

On second remand, the Court of Appeals *held*:

1. It cannot be disputed that the search of defendant's automobile was unconstitutional under *Gant* because the officer had arrested defendant's passenger and secured him in the back seat of a police vehicle before the officer searched defendant's automobile.

2. At the time of the search, *Belton* was binding precedent. It was objectively reasonable for the police to rely on *Belton* to authorize the search.

3. There is no basis for defendant's implicit suggestion that *Belton* was limited to vehicle searches incident to an arrest of the driver of a vehicle. *Belton* stated that its holding was to apply to the arrest of any occupant of the vehicle, making no distinction between the driver and the passengers.

4. At the time of the search, the arrest of defendant's passenger allowed the police to search the vehicle under the binding precedent of *Belton* and the police officer had a good-faith basis to rely on *Belton*. Because the search was constitutional under existing law at the time of the search, *Davis* provides that the exclusionary rule need not apply. The good-faith exception to the exclusionary rule applies. The circuit court should not have suppressed the evidence and quashed the information.

Reversed and remanded.

SEARCHES AND SEIZURES — EVIDENCE — EXCLUSIONARY RULE — GOOD-FAITH EXCEPTION TO EXCLUSIONARY RULE — RELIANCE ON BINDING PRECEDENT.

The good-faith exception to the exclusionary rule applies when the police conduct a search in compliance with binding appellate precedent that is later overruled; searches conducted in objectively

reasonable reliance on binding appellate precedent are not subject to the exclusionary rule and the fruit of the searches need not be suppressed.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *Mark Kneisel*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Brandy Y. Robinson*) for defendant.

ON SECOND REMAND

Before: WHITBECK, P.J., and TALBOT and OWENS, JJ.

PER CURIAM.

### I. OVERVIEW

This case is before this Court for the third time for reconsideration in light of *Davis v United States*.[1] This case has a tortuous and monstrously complex procedural history stretching out behind it. We believe that it helps, in framing the issue, to summarize that history in something approaching plain English. For ease of reference, we have delineated each of the three stages of this case sequentially and numerically; that is, *Mungo I*,[2] *Mungo II*,[3] and *Mungo III*.[4]

Initially, the circuit court suppressed the evidence: a gun for which defendant Michael Mungo did not hold a

---

[1] *Davis v United States*, 564 US ___; 131 S Ct 2419; 180 L Ed 2d 285 (2011).

[2] *People v Mungo*, 277 Mich App 577; 747 NW2d 875 (2008) (*Mungo I*), vacated and remanded 483 Mich 1091 (2009).

[3] *People v Mungo (On Remand)*, 288 Mich App 167; 792 NW2d 763 (2010) (*Mungo II*), vacated and remanded 490 Mich 870 (2011).

[4] *People v Mungo*, 490 Mich 870 (2011) (*Mungo III*).

concealed weapons permit, which the police found when they searched Mungo's car, incident to the arrest of Mungo's passenger in that car.[5] The prosecution appealed that decision, and in *Mungo I*, we applied *New York v Belton*,[6] a United States Supreme Court case, and held that the search was constitutionally permissible. We reached this conclusion even though the search was incident to the *passenger's* arrest and even "where before the search there was no probable cause to believe that the car contained contraband or that the driver and owner of the car had engaged in any unlawful activity."[7]

But in *Mungo II*, we were required by the Michigan Supreme Court[8] to reconsider our decision in light of *Arizona v Gant*.[9] *Gant* was a United States Supreme Court case that postdated and significantly limited the application of *Belton*. We determined that *Gant* had retroactive effect and then applied it to the facts of this case.[10] We affirmed the circuit court's suppression of the evidence. We concluded that, on the basis of *Gant*, the search of Mungo's car without a warrant was unreasonable and in violation of the Fourth Amendment.[11] Quite obviously, absent the United States Supreme Court's holding in *Gant*, we would have reached the opposite conclusion and reversed the circuit court's suppression of the evidence.

*Mungo II*, however, was not to be the end of the story. The Michigan Supreme Court granted[12] the prosecu-

---

[5] See *Mungo I*, 277 Mich App at 578.

[6] *New York v Belton*, 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981).

[7] *Mungo I*, 277 Mich App at 578.

[8] *People v Mungo*, 483 Mich 1091 (2009).

[9] *Arizona v Gant*, 556 US 332; 129 S Ct 1710; 173 L Ed 2d 485 (2009).

[10] *Mungo II*, 288 Mich App at 182-183.

[11] *Id.*

[12] *People v Mungo*, 488 Mich 920 (2010).

tion's application for leave to appeal our ruling in *Mungo II*. The Michigan Supreme Court then held that appeal in abeyance pending a decision in *Davis*.[13] *Davis* postdated *Gant*, and held that searches conducted in objectively reasonable reliance on binding appellate precedent are *not* subject to the exclusionary rule and therefore the fruit of such searches is *not* to be suppressed.[14] After the United States Supreme Court decided *Davis*, the Michigan Supreme Court vacated its previous order that granted leave to appeal, vacated our judgment in *Mungo II*, and again remanded this case to us for reconsideration "in light of *Davis*."[15]

So, the question before us, in the simplest possible terms, is this: in light of *Davis*, did the police search Mungo's car in objectively reasonable reliance on binding appellate precedent, namely the precedent that *Belton* established? We hold that the police did conduct the search in objectively reasonable reliance on binding appellate precedent. We therefore reverse the circuit court's exclusion of the gun evidence and remand for further proceedings.

## II. FACTS

### A. *MUNGO I*

This Court set forth the facts of Mungo's June 23, 2005 arrest in our first opinion, *Mungo I*, as follows:

> Washtenaw County Sheriff's Deputy Ryan Stuck lawfully initiated a traffic stop of a car driven by defendant. Mark Dixon was the sole passenger in the car. Upon request, defendant produced the vehicle registration and proof of insurance. Deputy Stuck also requested the occupants' driv-

---

[13] *People v Mungo*, 795 NW2d 156 (Mich, 2011).

[14] *Davis*, 564 US at ___; 131 S Ct at 2423-2424.

[15] *Mungo III*, 490 Mich 870.

er's licenses and ran Law Enforcement Information Network (LEIN) checks on both Dixon and defendant. Deputy Stuck found that Dixon had two outstanding warrants issued for failing to appear in court to answer traffic-violation charges. Deputy Stuck arrested Dixon, asked his dispatcher to send another officer to assist him, and secured Dixon in the backseat of his squad car. Deputy Stuck directed defendant to step out of his car and conducted a pat-down search. Thereafter, Deputy Stuck searched defendant's car and found an unloaded gun in a case underneath the driver's seat and ammunition in the glove compartment. Deputy Stuck asked defendant to produce a permit to carry a concealed weapon. However, defendant produced only a permit to purchase a firearm. Defendant's LEIN check did not reveal that he had been issued a concealed-weapons permit. Deputy Stuck arrested defendant for unlawfully carrying a concealed weapon.

In the circuit court, defendant moved to quash the information and suppress evidence of the gun. The prosecutor relied on *New York v Belton*, 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), to argue that the arrest of any person in a car justifies a search of the passenger compartment of that car. The prosecutors argued that the search that led to the discovery of the gun was constitutionally permissible because Dixon, a passenger in defendant's car, was lawfully arrested. Defendant relied on *State v Bradshaw*, 99 SW3d 73 (Mo App, 2003), a case in which a divided panel of the Missouri Court of Appeals distinguished *Belton* and held that police officers cannot lawfully search a driver's vehicle following the arrest of a passenger where the passenger was safely arrested and there was no reasonable suspicion that the driver possessed unlawful items.

The circuit court distinguished *Belton* and followed *Bradshaw*. The circuit court concluded that defendant was not under arrest at the time Deputy Stuck searched his car. The circuit court further concluded that defendant had a protected privacy interest in his car. The circuit court held that there was no probable cause to arrest defendant and, therefore, the search of his car was not constitutionally permissible.[16]

---

[16] *Mungo I*, 277 Mich App at 578-580.

The prosecution appealed the circuit court's decision. In an opinion authored by then Judge ZAHRA, this Court reversed and remanded. We applied *Belton*, in which the United States Supreme Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."[17] We concluded that the facts fit within *Belton* and that "a police officer may search a car incident to a passenger's arrest where before the search there was no probable cause to believe that the car contained contraband or that the driver and owner of the car had engaged in any unlawful activity."[18]

## B. *MUNGO II*

Mungo then sought leave to appeal in the Michigan Supreme Court. After holding the application in abeyance, the Michigan Supreme Court, in lieu of granting leave to appeal, vacated this Court's decision in *Mungo I* and remanded for this Court's reconsideration in light of *Gant*. In *Gant*, the vehicle's occupant was handcuffed and locked in a patrol car when the police searched the vehicle.[19] The United States Supreme Court distinguished *Belton*, in which four unsecured occupants were arrested and posed both a risk to the officer's safety and a risk of loss of evidence.[20] *Gant* held that the police may not search a vehicle "incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle."[21]

---

[17] *Belton*, 453 US at 460.

[18] *Mungo I*, 277 Mich App at 578.

[19] *Gant*, 556 US at 336.

[20] *Id.* at 344; see *Belton*, 453 US at 456.

[21] *Gant*, 556 US at 335.

On remand, in light of *Gant*, this Court affirmed the trial court's suppression of the gun evidence.[22] In *Mungo II*, we held that *Gant* applies retroactively and required the suppression of the evidence obtained from the unconstitutional search of defendant's vehicle.[23] In applying *Gant* to the facts of this case, we stated:

> Deputy Stuck placed Dixon under arrest after discovering that Dixon had two outstanding warrants for traffic violations. The officer secured Dixon in the backseat of the police vehicle. The officer searched the vehicle only after an additional police unit had arrived and defendant had been secured in the backseat of that police vehicle. Defendant was not under arrest at the time the search occurred, and Deputy Stuck searched defendant's vehicle incident to Dixon's arrest. Neither defendant nor Dixon would have been able to reach into the passenger compartment of defendant's vehicle when the search occurred; thus, concern for officer safety was not at issue. See *Gant*, 556 US at [337-338]; 129 S Ct at 1716. Further, because Dixon was placed under arrest for traffic violations, there would have been no reasonable basis for the officer to conclude that evidence of those offenses could be found in a search of defendant's vehicle. See *id.* at [343-344]; 129 S Ct at 1719; *Thornton [v United States*, 541 US 615, 632; 124 S Ct 2127; 158 L Ed 2d 905 (2004)] (Scalia, J., concurring in the judgment). Thus, we conclude that Deputy Stuck's warrantless search of defendant's car was unreasonable and in violation of the Fourth Amendment. See *Gant*, 556 US at [350-351]; 129 S Ct at 1723-1724.[24]

### C. *MUNGO III*

The prosecution sought leave to appeal in the Michigan Supreme Court. After granting leave and then holding the case in abeyance, the Court vacated its previous order that granted leave to appeal, vacated

---

[22] *Mungo II*, 288 Mich App at 170, 184.

[23] *Id.* at 182-183.

[24] *Id.* at 175.

this Court's opinion in *Mungo II*, and remanded the case to this Court for reconsideration,[25] this time in light of *Davis*. *Davis* considered the application of the exclusionary rule and its good-faith exception to vehicle searches incident to arrests of recent occupants that were conducted before the new rule was announced in *Gant*.[26] The United States Supreme Court held in *Davis* "that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule."[27]

### III. STANDARD OF REVIEW

This Court "review[s] de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies."[28] If a ruling on a motion to suppress evidence "involves an interpretation of the law or the application of a constitutional standard to uncontested facts," appellate review is de novo.[29]

### IV. THE PARTIES' POSITIONS

#### A. THE PROSECUTION'S POSITION

The prosecution argues that Deputy Stuck's search of Mungo's vehicle was permissible under *Belton* and that *Davis* held that the exclusionary rule need not apply to evidence obtained by the police who in good faith relied on existing caselaw. The prosecution notes that the Michigan Supreme Court initially granted leave to appeal in *Mungo II* only on the issue

---

[25] *Mungo III, 490 Mich 870.*

[26] *Davis,* 564 US at ___; 131 S Ct at 2428-2429.

[27] *Id.* at ___; 131 S Ct at 2423-2424.

[28] *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

[29] *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).

whether a good-faith exception to the exclusionary rule should apply to evidence seized pursuant to a pre-*Gant* search that was permissible under *Belton*. The prosecution asserts that the Michigan Supreme Court did not grant leave to appeal on any other issue, including whether the search was valid under *Belton*. The prosecution maintains that by granting leave to appeal on the first issue only, the Michigan Supreme Court implicitly determined that the search was valid under *Belton*.

The prosecution also argues that *Mungo I* did not announce a new rule or create an exception to *Belton*; it merely interpreted and applied *Belton* to the facts of the case and recognized that the bright-line rule of *Belton* was not limited to an arrest of the driver. The prosecution further argues that *Mungo II* assumed, without deciding, that a good-faith exception to the exclusionary rule can be based on Michigan caselaw, which *Davis* expressly permits. The prosecution disagrees with *Mungo II*'s characterization of *Mungo I* as announcing a new rule of law by extending *Belton* or applying it in a new context of a vehicle search incident to a passenger's arrest.

According to the prosecution, therefore, this Court concluded in *Mungo I* that the facts of this case fit "precisely" within *Belton* and that the application of *Belton* was not limited only to searches incident to an arrest of the driver. The prosecution maintains that, as in *Davis*, the exclusionary rule should not apply to evidence seized in an unconstitutional search before *Gant* was decided because suppression would not further the purpose of the exclusionary rule to deter police misconduct. The prosecution argues that the police searched Mungo's car in objectively reasonable reliance on *Belton*, which allowed a search incident to an arrest of an occupant of the vehicle.

## B. MUNGO'S POSITION

Mungo argues that *Davis* does not undermine this Court's analysis in *Mungo II* because, unlike the situation in *Davis*, Deputy Stuck did not reasonably rely on binding, settled precedent in conducting the search of Mungo's car. Mungo relies on then Judge ZAHRA's statement in *Mungo II* that the facts of this case present an issue of first impression and therefore the good-faith exception does not apply.

In making this argument, Mungo acknowledges *Davis*'s holding that the good-faith exception to the exclusionary rule applies when the police act in reasonable reliance on settled precedent that the United States Supreme Court later overrules. But Mungo maintains that *Davis* did not address whether the exclusionary rule applies when the police act in reliance on precedent that is not clear or settled at the time of the challenged search, circumstances that Mungo argues existed in this case.

Mungo contends that *Belton* was not settled law because no Michigan decision had applied *Belton* to a vehicle search incident to a *passenger's* arrest. Mungo argues that *Mungo II* correctly held that the good-faith exception to the exclusionary rule does not apply in this case and that *Davis* does not compel a different result.

## V. ANALYSIS

### A. *DAVIS*

This case turns on *Davis*, and so we consider it first. *Davis* arose in the context of the new rule announced in *Gant* regarding the constitutionality of vehicle searches incident to arrests of recent occupants. The issue in *Davis* was whether the good-faith exception to the exclusionary rule applies "when the police conduct a

search in compliance with binding precedent that is later overruled."[30] The United States Supreme Court held: "Because suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule."[31]

The vehicle search at issue in *Davis* occurred two years before the United States Supreme Court decided *Gant*.[32] In *Davis*, police officers stopped the vehicle in which the defendant was a passenger.[33] The driver was intoxicated, and the defendant gave a false name to the police.[34] The police arrested both the driver and the defendant, handcuffed them, and secured them in separate patrol cars.[35] The police then searched the vehicle and found a revolver in the defendant's jacket pocket.[36] The defendant was a convicted felon and was prohibited from possessing a firearm.[37] The defendant moved to suppress evidence of the gun.[38] The district court denied the motion, and the defendant was convicted of one count of possession of a firearm by a convicted felon.[39]

While the defendant's appeal was pending in the United States Court of Appeals for the Eleventh Cir-

---

[30] *Davis*, 564 US at ___; 131 S Ct at 2423.

[31] *Id.* at ___; 131 S Ct at 2423-2424.

[32] *Id.* at ___; 131 S Ct at 2425.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at ___; 131 S Ct at 2425-2426, citing 18 USC 922(g)(1).

[38] *Davis*, 564 US at ___; 131 S Ct at 2426.

[39] *Id.*

cuit, the United States Supreme Court decided *Gant*.[40] Thus, on appeal, the Eleventh Circuit applied *Gant* and held that the vehicle search incident to the defendant's arrest violated his Fourth Amendment rights. However, it declined to apply the exclusionary rule, reasoning that penalizing the arresting officer for following binding appellate precedent would not deter Fourth Amendment violations.[41] Therefore, the Eleventh Circuit affirmed the defendant's conviction.[42]

On appeal, the United States Supreme Court clarified that *Gant* applied retroactively to Davis's case because the direct appeal of his conviction was still pending when *Gant* was decided.[43] However, the issue was not the retroactivity of *Gant*, but the appropriate remedy for a Fourth Amendment violation that predated *Gant*:

> When this Court announced its decision in *Gant*, Davis's conviction had not yet become final on direct review. *Gant* therefore applies retroactively to this case. Davis may invoke its newly announced rule of substantive Fourth Amendment law as a basis for seeking relief. The question, then, becomes one of remedy, and on that issue Davis seeks application of the exclusionary rule. But exclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred. The remedy is subject to exceptions and applies only where its "purpose is effectively advanced."[44]

The United States Supreme Court noted that it was not disputed that the police search in *Davis* was valid under the Eleventh Circuit's accepted interpretation

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at ___; 131 S Ct at 2431.

[44] *Id.* (citations omitted).

and application of *Belton,* which many courts viewed as "authoriz[ing] automobile searches incident to arrests of recent occupants, regardless of whether the arrestee in any particular case was within reaching distance of the vehicle at the time of the search."[45] "Like most courts, the Eleventh Circuit had long read *Belton* to establish a bright-line rule authorizing substantially contemporaneous vehicle searches incident to arrests of recent occupants."[46]

The United States Supreme Court then proceeded to consider application of the exclusionary rule in light of the officers' compliance with then existing caselaw:

> The question in this case is whether to apply the exclusionary rule when the police conduct a search in objectively reasonable reliance on binding judicial precedent. At the time of the search at issue here, we had not yet decided [*Gant*] .... Although the search turned out to be unconstitutional under *Gant,* all agree that the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way.[47]

The Court determined that the exclusionary rule does not apply in situations in which the police followed established precedent:

> Under our exclusionary-rule precedents, this acknowledged absence of police culpability dooms Davis's claim. Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield "meaningfu[l]" deterrence, and culpable enough to be "worth the price paid by the justice system." The conduct of the officers here was neither of these things. The officers who conducted the search did not violate Davis's Fourth Amendment rights

---

[45] *Id.* at ___; 131 S Ct at 2424.

[46] *Id.* at ___; 131 S Ct at 2426, citing *United States v Gonzalez,* 71 F3d 819, 822, 824-827 (CA 11, 1996).

[47] *Davis,* 564 US at ___; 131 S Ct at 2428.

deliberately, recklessly, or with gross negligence. Nor does this case involve any "recurring or systemic negligence" on the part of law enforcement. The police acted in strict compliance with binding precedent, and their behavior was not wrongful. Unless the exclusionary rule is to become a strict-liability regime, it can have no application in this case.[48]

The Court reasoned that excluding the evidence in the case before it would yield no "meaningful" deterrence:

About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn "what is required of them" under Fourth Amendment precedent and will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than " 'ac[t] as a reasonable officer would and should act' " under the circumstances. The deterrent effect of exclusion in such a case can only be to discourage the officer from " 'do[ing] his duty.' "[49]

The *Davis* Court concluded:

That is not the kind of deterrence the exclusionary rule seeks to foster. We have stated before, and we reaffirm today, that the harsh sanction of exclusion "should not be applied to deter objectively reasonable law enforcement activity." Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule.[50]

The United States Supreme Court reviewed the history of the exclusionary rule and its parameters and

---

[48] *Id.* at ___; 131 S Ct at 2428-2429 (citations omitted).

[49] *Id.* at ___; 131 S Ct at 2429 (citations omitted).

[50] *Id.* (citation omitted).

the good-faith exception that was first recognized in *United States v Leon*.[51] The Court concluded that the evidence found during the unconstitutional search was not subject to the exclusionary rule because the police officers reasonably relied on existing caselaw precedent when conducting their search:

> Davis did not secure a decision overturning a Supreme Court precedent; the police in his case reasonably relied on binding Circuit precedent. See *United States v. Gonzalez*, 71 F.3d 819 [(CA 11, 1996)]. That sort of blameless police conduct, we hold, comes within the good-faith exception and is not properly subject to the exclusionary rule.

*   *   *

> It is one thing for the criminal "to go free because the constable has blundered." *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926) (Cardozo, J.). It is quite another to set the criminal free because the constable has scrupulously adhered to governing law. Excluding evidence in such cases deters no police misconduct and imposes substantial social costs. We therefore hold that when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply.[52]

### B. APPLYING *DAVIS*

In Michigan, even before the United States Supreme Court decided *Davis*, this Court recognized that the good-faith exception to the exclusionary rule applies to pre-*Gant* searches that were conducted in reasonable reliance on *Belton*. In *People v Short*,[53] this Court held

---

[51] *Id.* at ___; 131 S Ct at 2426-2428; see *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984).

[52] *Davis*, 564 US at ___; 131 S Ct at 2434.

[53] *People v Short*, 289 Mich App 538, 551-552; 797 NW2d 665 (2010) (citation omitted).

that the good-faith exception to the exclusionary rule applies to a permissible *Belton* search conducted before the *Gant* decision:

> [A]t the time [the officer] conducted the search, our courts adhered to the nearly universally accepted reading of *Belton* that an officer may search a vehicle incident to a lawful arrest. Law enforcement officers are entitled to, and indeed must, rely on court decisions that define appropriate police conduct, and it is illogical to impose "the extreme sanction of exclusion" when a clear rule of conduct is later abrogated by the Supreme Court. Accordingly, though the well-settled interpretation of *Belton* was changed by *Gant*, because it was objectively reasonable for [the officer] to have relied on that precedent, the good-faith exception to the exclusionary rule applies and the trial court correctly denied [the] defendant's motion to suppress.

Here, it cannot be disputed that the search of Mungo's car was unconstitutional under *Gant*. The police had arrested Mungo's passenger, Dixon, and secured him in the back of a squad car before Deputy Stuck searched Mungo's vehicle. Again, the question is whether Deputy Stuck reasonably relied on the established rule in *Belton*, so that the good-faith exception to the exclusionary rule applies, as in *Davis*.

Mungo argues that the search of his vehicle was not permissible under *Belton* because Michigan courts had never before applied *Belton* to permit a vehicle search incident to an arrest when the arrestee was a *passenger*, rather than the driver. He relies on statements in *Mungo II* that this is an issue of first impression because *Mungo I* was "the first published case in Michigan to address the applicability and extension of *Belton* to a vehicle search solely incident to a passenger's arrest."[54]

---

[54] *Mungo II*, 288 Mich App at 184.

First, we note that *Mungo I* and *Mungo II* are not controlling authorities. " '[A] Court of Appeals opinion that has been vacated by the majority of the Supreme Court without an expression of approval or disapproval of this Court's reasoning is not precedentially binding.' "[55] Because the Michigan Supreme Court vacated *Mungo I* and *Mungo II*, they have no precedential value.

Second, at the time of the search in this case, *Belton* was binding precedent, and, therefore, reliance on *Belton* by the police to authorize the search of defendant's car was objectively reasonable. Michigan had followed the *Belton* rule since 1983, when this Court first applied *Belton* in *People v Miller (On Remand)*.[56] And even if no Michigan decision had applied *Belton* in the context of a search incident to a *passenger's* arrest, the broad holding of *Belton* itself permitted the search.

Third, there is no basis for Mungo's implicit suggestion that *Belton* was limited to vehicle searches incident to an arrest of the *driver* of a vehicle. To the contrary, the defendant in *Belton* was a *passenger* in the car that the police searched.[57] The four occupants of the car were arrested, and no distinction was made between the driver and the passengers. *Belton* articulated that its holding was to apply to the arrest of any occupant of the vehicle: "[W]e hold that when a policeman has made a lawful custodial arrest of the *occupant* of an automobile,

[55] *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006), quoting *People v Akins*, 259 Mich App 545, 550 n 8; 675 NW2d 863 (2003).

[56] *People v Miller (On Remand)*, 128 Mich App 298, 302; 340 NW2d 858 (1983).

[57] See *Belton*, 453 US at 462 ("The jacket was located inside the passenger compartment of the car in which the respondent had been a passenger just before he was arrested.").

he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."[58]

Notably, in *Mungo I*, this Court considered the scope of *Belton*. We rejected Mungo's attempt to distinguish *Belton* from this case on the basis that it was the passenger, not the driver, who was arrested and incident to whose arrest the search was conducted:

> We find no merit in defendant's argument that *Belton* is distinguishable from the present case and ought not be applied under these circumstances. . . . [A]s noted by Justice Rehnquist in *Belton, supra* at 463 (Rehnquist, J., concurring), the majority did not rest its decision on the automobile exception [to the warrant requirement]. Instead, the Supreme Court elected to premise its decision in *Belton* on the search-incident-to-an-arrest exception. In doing so, the Supreme Court carefully crafted its opinion. In its statement of facts, the Supreme Court indicated that "[t]here were four men in the car, one of whom was Roger Belton, the respondent in this case." *Belton, supra* at 455. Significantly, the Supreme Court did not premise its holding in *Belton* on the arrest of the driver of the car, Belton, or any other passenger. Rather, the Supreme Court set forth the concisely worded rule: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton, supra* at 460.[59]

This is precisely what occurred in this case. Deputy Stuck made an arrest of Dixon, an occupant of the vehicle owned and operated by defendant. Conse-

---

[58] *Id.* at 460 (emphasis added). See also *Short*, 289 Mich App at 542-543, quoting *Gant*, 556 US at 341 ("Under *Belton* and its progeny, it was lawful for an officer to search a vehicle 'incident to the arrest of a *recent occupant* even if there is no possibility the arrestee could gain access to the vehicle at the time of the search.' ") (emphasis added).

[59] *Mungo I*, 277 Mich App at 587-588.

quently, Deputy Stuck was constitutionally permitted to conduct a search of the passenger compartment of defendant's car.[60]

### VI. CONCLUSION

There is no dispute that Dixon was a recent occupant of Mungo's vehicle. Therefore, at the time of the search, his arrest allowed the police to search the car under *Belton*, and Deputy Stuck had a good-faith basis to rely on *Belton*. There is no evidence of police misconduct or an intentional violation of Mungo's Fourth Amendment rights. Because the well-established bright-line rule in *Belton* authorized a search incident to an arrest of a recent occupant of a vehicle, without regard to whether the occupant was the driver or a passenger, Deputy Stuck's search of Mungo's car after Dixon's arrest was permissible under *Belton*. *Davis* holds that under such circumstances, the exclusionary rule need not apply. Because the search was constitutional under existing law at the time of the search, *Davis* compels the same result here. We therefore conclude that the good-faith exception to the exclusionary rule applies and that the circuit court should not have suppressed the evidence pertaining to the gun that Deputy Stuck discovered in his search of Mungo's car and quashed the information.

We reverse and remand. We do not retain jurisdiction.

WHITBECK, P.J., and TALBOT and OWENS, JJ., concurred.

---

[60] *Id.*