*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KIRK AUSTIN SAVAGE,

Defendant-Appellant.

UNPUBLISHED
September 15, 2025
8:40 AM

No. 369421
Midland Circuit Court
LC No. 22-008974-FH

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Defendant, Kirk Austin Savage, appeals as of right his jury-trial convictions of felonious assault, MCL 750.82; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and carrying a concealed weapon (CCW), MCL 750.227. The trial court sentenced defendant to serve 12 months in prison for the felonious assault and CCW convictions and a consecutive term of 2 years for the felony-firearm conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case stems from two repossession agents' attempt to repossess the truck of defendant's associate, Justin Berger. When the repossession agents began to hitch Berger's truck to their tow truck, Berger grew agitated and started to take the wheels off of the truck. Shortly after, defendant arrived and positioned his own pickup truck so that it was blocking the tow truck. Defendant, still sitting in is own truck, racked a handgun and pointed it at one of the repossession agents. The other repossession agent called the police.

Before the police arrived, defendant pulled his truck on the opposite side of Berger's camper and returned, unarmed, to help Berger remove the tires from Berger's truck. Police officers arrived and spoke with the repossession agents, Berger, an unknown woman, and defendant. Defendant told police officers that he did not have a gun with him. The police officers searched defendant's truck and found an unsecured handgun in the passenger compartment. Defendant did not have a concealed pistol license (CPL). A jury found defendant guilty as described above.

After filing his claim of appeal, defendant moved in this Court to remand this matter to the trial court for a *Ginther* hearing[1] and to request a new trial. This Court granted the motion.[2] On remand, defendant argued trial counsel was ineffective for failing to move to suppress the gun found in a search of his truck and for failing to admit a portion of police body camera footage that contained an interview with an unknown woman who stated she saw no guns during the incident. Defendant also moved for a new trial on the basis that the jury verdict was against the great weight of the evidence. After holding an evidentiary hearing, the trial court denied the motion with respect to each argument. Regarding the ineffective-assistance claims, the trial court explained that the police officers had probable cause to search for the firearm and any motion to suppress would have been denied. Further, the trial court explained the statement of the unknown woman would not have been beneficial to the defense because she was not positioned to see inside defendant's truck during the incident. Regarding the great-weight-of-the-evidence claim, the trial court explained conflicting testimony regarding the presence of the gun was presented to the jury and it was within the jury's province to determine the credibility of the witnesses before it. This appeal followed.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises two claims of ineffective assistance of counsel. First, he argues that his trial counsel was ineffective for failing to move to suppress the handgun that was found in his truck because it was the product of an unlawful search. Second, defendant argues that trial counsel was ineffective for failing to present body camera footage of a woman stating that she did not see a gun during the incident. We disagree as to both claims.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). This Court reviews the trial court's findings of fact for clear error and reviews de novo questions of law. *Id*. "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted).

Both the United States and Michigan Constitutions entitle a criminal defendant to the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To obtain a new trial on the basis of ineffective assistance of counsel, a party must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome [of trial] would have been different." *People v Trakhtenberg*, 493 Mich 38, 51-52; 826 NW2d 136 (2012). See also *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Savage*, unpublished order of the Court of Appeals, entered October 14, 2024 (Docket No. 369421).

sufficient to undermine confidence in the outcome." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation omitted).

"The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NS2d 587 (2014). A successful ineffective-assistance claim requires the defendant to overcome a "strong presumption that counsel's performance was born from a sound trial strategy." *Ackley*, 497 Mich at 388 (quotation marks and citation omitted). "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). We consider decisions regarding what evidence to present to be matters of trial strategy, and we do not "second-guess counsel on matters of trial strategy" or "assess counsel's competence with the benefit of hindsight." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

## 1. LAWFULNESS OF THE SEARCH

Trial counsel was not ineffective for failing to make a frivolous motion to suppress the handgun.

Both the United States and Michigan Constitutions protect individuals from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v United States*, 389 US 347, 357; 88 S Ct 507; 19 L Ed d 576 (1967). Evidence obtained without a warrant that was not obtained under such an exception is excluded. See *People v Short*, 289 Mich App 538, 544; 797 NW2d 665 (2010).

One such exception is that police officers do not need a warrant to search an automobile so long as the search is supported by probable cause. *Carroll v United States*, 267 US 132, 149; 45 S Ct 280; 69 L Ed 543 (1925). In other words, an automobile search "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999) (quotation marks and citation omitted). Probable cause exists when an officer has facts that would "warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v Harris*, 568 US 237, 243; 133 S Ct 1050; 185 L Ed 2d 61 (2013) (quotation marks and citation omitted; alteration in original). It is "traditionally determined on the basis of the totality of the circumstances." *People v Kazmierczak*, 461 Mich 411, 423 n 11; 605 NW2d 667 (2000), superseded by statute on other grounds. A "fair probability that contraband or evidence of a crime will be found in a particular place" is sufficient to establish probable cause. *People v Garvin*, 235 Mich App 90, 102; 597 NW2d 194 (1999) (quotation marks and citation omitted).

In this case, police officers were summoned to the property because one repossession agent reported that defendant had pointed a gun at the other agent from his vehicle. When the police officers arrived, the repossession agent pointed out defendant's vehicle as the vehicle from which a gun had been pointed, and he described to one of the officers what defendant was wearing. The other agent similarly reported that defendant had pulled in front of the repossession truck, racked a pistol, and pointed it at him. When the police asked defendant why the repossession agents would think there had been a gun, defendant responded that he had an application on his phone

that made gun noises. An officer checked for the gun outside of the truck and expressed belief that it was in the camper, and the officer ultimately searched defendant's truck and found the firearm.

Defendant argues that, because the police searched outside of the truck and expressed belief that the gun was in the camper, the police lacked probable cause to search the truck. However, defendant has not provided authority for the proposition that the absence of evidence outside of a truck vitiates the probable cause to search the truck. If anything, the fact that police first searched for the firearm outside of the truck and found nothing increased the probability of the firearm being in the truck, as there were only so many places defendant could have placed a firearm. Two witnesses reported to the police that defendant had pointed a gun at a repossession agent from inside the truck—and defendant himself partially corroborated the witnesses' account by claiming that what they heard was the sound of a phone application that made gun noises. Two people reporting a firearm inside of a truck, with the truck's driver agreeing that the witnesses at least heard the sound of a pistol racking, would establish a fair probability that a gun was present and that it would be located inside the truck.

Defendant further argues that information provided by those witnesses became stale and could not provide the basis for probable cause. However, nothing in the record indicates that the information provided by these witnesses became stale. At some point after racking the gun and pointing it at the repossession agent, defendant moved the vehicle a short distance to the opposite side of the camper and exited to assist Berger. The two witnesses indicated that they did not see defendant remove the firearm from the truck at any point. No other witnesses saw defendant leave the vehicle with a firearm in his possession. The small change in the position of the truck and the possibility that defendant may have disposed of the firearm outside the truck did not render the information provided to the police officers stale. The circumstances and location of the incident remained the same while the police officers searched the premises. Accordingly, a fair probability remained that the gun was present and would be located inside the truck.

Finally, defendant argues that the police officers asked for defendant's consent to search his vehicle and if they truly believed the firearm was in his truck, they would have searched the truck without pressuring him to give consent to the search. Again, defendant has provided no authority for the proposition that the police officers' request for consent to search the truck would vitiate the probable cause to search the truck. Police officers regularly ask for consent to conduct searches. Consent is a separate exception to the warrant requirement and a police officer does not need probable cause to conduct a search for which he has received consent. See *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999). Accordingly, the request for consent to search the truck had no bearing on whether the police officers had probable cause to search the truck.

Because the police had probable cause to search defendant's truck, a motion to suppress the evidence retrieved from the truck would have been unsuccessful and frivolous. Failing to file a frivolous motion does not render trial counsel ineffective. See *Riley*, 468 Mich at 142. Accordingly, trial counsel was not ineffective for failing to move to suppress defendant's firearm.

2. STATEMENT FROM THE UNKNOWN WOMAN

Trial counsel was not ineffective for failing to introduce the portion of a police officer's body camera footage in which he spoke with the unknown woman because trial counsel's decision not to seek its admission was borne of reasonable trial strategy, the evidence was inadmissible hearsay, and the evidence would not have been likely to change the outcome of the trial.

Body camera footage from the police officer's response to the incident depicted a police officer interviewing a woman who saw the altercation. In the footage, the woman described defendant pulling in front of the repossession truck and getting out to remove the tires. She stated twice that she did not see a gun.

Defendant argues that trial counsel was ineffective for objecting when the prosecution sought to admit all of the police body camera footage captured from the day of the incident. However, this assertion is unsupported by the record. The record reflects that the prosecution only sought to admit the portions of the body camera footage actually played for the jury. The portion of the transcript defendant pointed to in support of his argument reflects that trial counsel was merely clarifying that the prosecution sought to admit the portions of the body camera footage that were already played for the jury. Consequently, there is no factual support for this claim of error. See *Douglas*, 496 Mich at 592.

Defendant further argues that the trial court was ineffective for failing to seek admission of the portion of the body camera footage in which the unknown woman was interviewed. At the *Ginther* hearing, trial counsel testified that he had reviewed the body camera footage before trial and concluded that the interview of the unknown woman would not be beneficial to the defense. Trial counsel explained that because of the position in which the woman watched the incident, approximately 50 feet away from the incident and on the other side of the truck, she would have no way of seeing in defendant's truck when he arrived and would not have personal knowledge whether defendant, inside the passenger compartment of the truck, pointed a gun at the repossession agent. Defendant has not overcome the presumption that trial counsel's decision was a matter of trial strategy. See *Ackley*, 497 Mich at 388.

Moreover, trial counsel testified that it was unlikely that the footage of the unknown woman's statement would have been admitted, as this portion of the video by itself would be hearsay. "Hearsay 'is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *People v Smith*, 336 Mich App 79, 110; 969 NW2d 548 (2021), quoting MRE 801(c). It is inadmissible unless the rules of evidence provide otherwise. MRE 802. Defendant has not argued how the statements would have otherwise been admissible, and defense counsel was not ineffective for failing to make a meritless motion. See *Riley*, 468 Mich at 142.

Nevertheless, even assuming for the sake of argument that trial counsel was ineffective for failing to seek admission of the footage, defendant was not prejudiced by the failure. The repossession agents consistently testified that defendant had brandished a gun while he was in his truck, and the police found a gun in defendant's truck. As stated, the footage indicates that the woman did not actually see the portion of the incident related to the assault. Therefore, there is not a reasonable probability that the outcome would have been different but for defense counsel's alleged ineffectiveness for failing to introduce the footage. See *Ackley*, 497 Mich at 389.

B. CONSTITUTIONALITY OF MCL 750.227(2)

Next, defendant argues that MCL 750.227(2) is unconstitutional. We disagree.

"We review for plain error an unpreserved challenge to the constitutionality of a statute." *People v Miller*, 326 Mich App 719, 737; 929 NW2d 821 (2019). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

The statute at issue, MCL 750.227(2), states as follows:

A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license.

The United States Supreme Court has held that a firearm regulation is only constitutional if it is "consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Assoc, Inc v Bruen*, 597 US 1, 17; 142 S Ct 2111; 213 L Ed 2d 387 (2022). A "shall-issue" licensing system, under which any applicant who meets a set of objective and definite standards will receive a firearm permit, is not inherently unconstitutional. *Id*. at 38 n 9. This Court has held that MCL 750.227(2) is not unconstitutional because Michigan's licensing scheme is a shall-issue scheme. *People v Langston*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 367270); slip op at 5.[3]

Defendant's argument regarding MCL 750.227(2), however, is distinct from the argument in *Langston*. Defendant argues that MCL 750.227(2) is unconstitutional facially and as applied to him because it infringes on his right to bear arms by preventing him from transporting a firearm in his vehicle without a CPL. However, MCL 750.227(2) does not prevent a person without a CPL from transporting a firearm in a vehicle because MCL 750.231a provides exceptions:

(1) Subsection (2) of section 227 does not apply to any of the following:

\* \* \*

(d) To a person while transporting a pistol for a lawful purpose that is licensed by the owner or occupant of the motor vehicle in compliance with section 2 of 1927

---

[3] This Court is bound to follow *Langston*. See MCR 7.215(C)(2).

PA 372, MCL 28.422, and the pistol is unloaded in a closed case designed for the storage of firearms in the trunk of the vehicle.

(e) To a person while transporting a pistol for a lawful purpose that is licensed by the owner or occupant of the motor vehicle in compliance with section 2 of 1927 PA 372, MCL 28.422, and the pistol is unloaded in a closed case designed for the storage of firearms in a vehicle that does not have a trunk and is not readily accessible to the occupants of the vehicle.

Therefore, a CPL is not required to transport a firearm in a motor vehicle, and defendant's argument is misplaced. He has not shown that MCL 750.227(2) is unconstitutional.

## C. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues that the verdict in his case was against the great weight of the evidence. We disagree.

This Court reviews "for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*.

This Court has previously described the test to determine whether a verdict is against the great weight of the evidence as follows:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Further, the resolution of credibility questions is within the exclusive province of the jury. [*Id*. at 469-470 (quotation marks and citation omitted).]

However, there is a "very narrow exception" to this rule, which applies when "testimony contradicts indisputable physical facts or laws, . . . is patently incredible or defies physical realities, . . . is material and is so inherently implausible that it could not be believed by a reasonable juror, . . . or where the witnesses testimony has been seriously impeached and the case marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (quotation marks and citations omitted).

Defendant's first argument is that conflicting evidence was presented at trial whether defendant pointed a gun at the repossession agent. This argument relates to his convictions of felonious assault and felony-firearm. "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610

(2007) (quotation marks and citation omitted). The elements of felony-firearm are that (1) defendant committed or attempted to a commit a felony and (2) carried or possessed a firearm when committing or attempting to commit the felony. *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000).

In this case, the evidence supporting defendant's convictions of felonious assault and felony-firearm consisted of testimony from the repossession agents that they saw defendant pointing a gun at one of the agents and heard defendant rack the pistol and the fact that police found a handgun in defendant's truck. The evidence against the verdict consisted of Berger's denial of seeing defendant with a firearm and defendant's denial of lowering his window and of having his handgun in his possession. Both Berger and defendant testified that defendant had an impact wrench, which may have been mistaken for a firearm. However, neither Berger nor defendant mentioned the impact wrench to police, and other parts of Berger's testimony were impeached: Berger testified that one repossession agent grabbed him by the throat, but the police denied being told that anybody grabbed Berger by the throat. After the repossession agents testified that Berger picked up a two-by-four and held it as if to swing it at them, Berger testified that he picked up the two-by-four to defend himself. However, on the day of the incident, he denied picking up a two-by-four at all and instead claimed that he tripped on one. While testimony from the repossession agents conflicted with testimony from Berger and defendant, the agents did not provide testimony that was contrary to physical reality or that was seriously impeached. As such, the jury's credibility determinations will not be disturbed. See *Lemmon*, 456 Mich at 643-644.

The jury's determination that defendant pointed the gun at the repossession agent was not against the great weight of the evidence. Because defendant's conviction of felonious assault was supported by the great weight of the evidence, and record evidence supports that defendant possessed a gun at the time of the incident, defendant's conviction of felony-firearm was also supported by the great weight of the evidence.

Finally, defendant contends his conviction of CCW was against the great weight of the evidence because no record evidence disputed defendant's belief that the gun was unloaded. "To support a conviction for carrying a weapon in [a vehicle], the prosecution must show: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was 'carrying' it." *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999) (quotation marks and citation omitted; alteration in original); see also MCL 750.227. A "pistol" is defined as "a loaded or unloaded firearm that is 26 inches or less in length, or a loaded or unloaded firearm that by its construction and appearance conceals itself as a firearm." MCL 750.222(f). There is no element of CCW that requires the pistol to be loaded or for the defendant to know it is loaded. Sufficient evidence supported defendant's conviction of CCW.

Affirmed.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford

-8-